[No. 22048. *En Banc.* March 25, 1930.]

J. E. Berry *et al., Appellants,* v. Farmers Exchange of Walla Walla, *Respondent.*[1]

*Thos. P. Gose, Jr.* and *Pedigo & Watson,* for appellants.

*Marvin Evans* and *Sharpstein & Smith,* for respondent.

French, J.—Respondent was the owner of an old three-story building in the city of Walla Walla, Washington, which was being operated as an apartment

[1] Reported in 286 Pac. 46.

house or lodging house. This building was erected about 1890, long before the enactment of the building ordinance hereinafter referred to. In one of the rooms in this building, known as Apartment 4, on the second floor of the building, a woman by the name of Mrs. Bakken was conducting a dressmaking shop, and was also using this room as her living quarters. The appellant was employed by Mrs. Bakken as a seamstress and was working in the apartment.

This apartment consisted of one large room, the size of the room as indicated on the exhibits being twenty-one feet, six inches, by eighteen feet, six inches. There was a door from this room into the hallway and, on entering the room, there was a door immediately to the left leading into an adjoining room or apartment, and another door in the right hand wall entering into another apartment. These two doors were closed and locked, the evident purpose being to permit this large room to be joined with other rooms by means of the doors, thus providing a larger suite or apartment in case one cared to rent more space. The situation is one often-times seen in various hotels in the state, where, by the unlocking of doors between various rooms, a series of single rooms may be converted into a suite of rooms.

On March 10, 1929, appellant was engaged at her work as a seamstress in the first mentioned apartment. Mrs. Bakken, appellant's employer, had in this apartment an oil stove which was kept in her apartment and used for cooking. In some unknown way, the container in which the supply of oil had been placed to feed the oil stove caught fire. Mrs. Bakken took this container and, in attempting to carry it out into the hallway, dropped it in the doorway of the apartment leading into the hallway, and, the other doors leading into apartment 3 and apartment 5 being closed and locked, and

the oil continuing to burn fiercely in the door leading into the hallway, it was impossible for either Mrs. Bakken or appellant to escape through the doorway, so both women climbed out of the window and dropped to the street below, Mrs. Bakken dying from the injuries received in the fall, and appellant, Mrs. Berry, receiving severe injuries as the result of such fall.

This action was brought by Mrs. Berry and her husband to recover damages from the owner of the building, the theory of the plaintiffs' case being that the respondent had violated the terms of the building ordinance of the city of Walla Walla relative to fire escapes in buildings such as this, and that the violation of this ordinance was the proximate cause of the injury.

At the close of appellants' case, the trial court granted a nonsuit on the ground and for the reason that, conceding that there had been a violation of the city ordinance in the construction of fire escapes or other means of exit from the building, such failure could not have been the proximate cause of the injury.

That violation of an ordinance, generally speaking, is negligence, there can be no dispute, but the law is well settled that there must be a causal connection between the negligence arising from the violation of the ordinance and the accident itself, before a cause of action arises from such violation. This rule is recognized in the case of *Ross v. Smith & Bloxom,* 107 Wash. 493, 182 Pac. 582. See, also, *Bullis v. Ball,* 98 Wash. 342, 167 Pac. 942; 22 R. C. L., p. 113, § 3.

Let us now examine the terms of this ordinance. Sections 68 and 70 (Ordinance No. 1440), these being the two sections on which appellants rely, provide as follows:

"That buildings of three or more stories in height now or hereafter erected in the city of Walla Walla

shall be provided with sufficient well constructed, easily accessible fire escapes or other suitable means of exit.

"All fire escapes shall be kept clear of all obstructions whatsoever. They shall be placed at the ends of the halls or passages with a door or window on each floor to each fire escape in the building. All halls and passages must extend to the outer walls of buildings hereafter built. The doors and windows leading to fire escapes above the first story shall be provided with fastenings that can be easily opened.

"That hotels, apartment and lodging houses more than two stories in height shall have at the ends of each main hallway on outside of building a fireproof stairway leading from within nine feet of the street or alley to top of roof. Such stairways must be not less than two feet in the clear; and must have proper balconies at each floor level, and at bottom of each flight if same returns on itself on half-story height; and the entire outside of the stairway from bottom to top must be protected by wire netting of three-sixteenths inch diameter wire or strong metal grill work. Balconies to correspond to those heretofore specified for fire escapes; treads of stairways to be not less than six inches wide and not less than five inches run measured from nosing to nosing and risers not to exceed twelve inches. Stringers for stairs to be of six inch steel channel bars, weighing not less than eight pounds per foot, or its equivalent, and bolts or rivets for fastening steel or wrought iron brackets and treads to stringers, to be not less than three-eighths inch diameter bolts or rivets to each side, treads to be made of not less than four half inch square steel bars."

There is nothing in the terms of this ordinance that would require the fire escape to pass by the window of the apartment in which appellant was trapped. If respondent had complied with the terms of the ordinance, it would still have been necessary for appellant to get out of the room in which she was trapped and into the hallway, but, under the circumstances

which existed on the day of the fire, could appellant have gotten out of the room and into the hallway, she would not have needed the fire escape. She could have walked down the stairway. It would have been idle and useless for appellant to have used the fire escape if she could have passed through the door of the room to the hallway.

There is nothing in this ordinance which requires the doors between adjoining apartments to be left open or unlocked. In fact, it is a common experience in every hotel and apartment house in this state for the doors between connecting rooms to be locked. If, for some reason such as existed in this case, the only means of egress from the room in which these parties found themselves is shut off, the building might have been covered with fire escapes and, unless one happened to pass their window, there would be no means or method of using the fire escape, even though the ordinance had been complied with strictly. Under the terms of this ordinance, no duty devolved upon respondent to carry a fire escape past the window in the room from which appellant jumped or fell, and the jury could not be permitted to speculate as to whether or not a fire escape might be carried past the window of this particular apartment.

This fire originated in a kerosene stove, and the fact remains that the only egress from the room in which appellant was working was cut off by the action of Mrs. Bakken in depositing the burning can of oil in the doorway leading from the apartment to the hallway. Had it been possible to pass through this doorway, appellant could have safely left the building at any time. Adequate means of escape were not only available and at hand, but, as a matter of fact, the nature and extent of the fire being as slight as they were, it was only necessary to get away from the immediate vicinity of

the fire to be absolutely safe, and it was not even necessary to leave the building for that purpose.

Some complaint is made that the trial court refused to permit appellants to prove that the respondent had a house rule against the use of oil stoves and had failed to make any effort to enforce this rule. No citation of authority is given to sustain this proposition, and we find it without merit.

There being no causal connection between the injury complained of and the violation of the city ordinance, if there was a violation of the ordinance, and if the ordinance applies to such facts as we have outlined, the judgment is affirmed.

MITCHELL, C. J., PARKER, MAIN, BEALS, TOLMAN, and MILLARD, JJ., concur.