[No. 31510.   Department One.   September 6, 1951.]

JAMES O. HAYES et al., Appellants, v. A. C. BROWER et al., Respondents.[1]

[1]Reported in 235 P. (2d) 482.

*Kennett & McCutcheon* and *Fred S. Merritt,* for appellants.

*Kahin, Carmody & Horswill,* for respondents.

BEALS, J.—The defendants in this action, A. C. Brower and Marie K. Brower, were, at all times mentioned in the complaint herein, husband and wife and the parents of Allison C. Brower, who, at the time of the events hereinafter referred to, was sixteen years of age and was living with his parents at their home in Seattle. The events which resulted in the institution of this action occurred October 26, 1947, on which date the defendants owned a 1939 two-door Ford sedan, used generally as a family automobile.

On the date referred to, plaintiff James O. Hayes had a son, John Kelly Hayes, eighteen years of age, who died approximately twelve hours after the accident hereinafter referred to, as the result of injuries which he received at that time.

Plaintiff Hattie L. Stevens, a widow, is the mother of Donald Wallace Stevens, who was seventeen years of age at the date hereinabove mentioned. Mrs. Stevens was appointed guardian *ad litem* of her son prior to the institution of this action.

Plaintiff Wayne N. Rumsey is the father of Wayne Henry Rumsey, then sixteen years of age, and, prior to the institution of this action, was appointed guardian *ad litem* for his son.

By their complaint in this action, plaintiffs stated several causes of action.

Plaintiff Hayes, in the first cause of action, stated in detail the facts upon which plaintiffs sought recovery of judgment against the defendants. All of the plaintiffs demanded judgment against defendants on account of damages sustained in an automobile collision which occurred at about

five minutes after one o'clock a. m., October 26, 1947, and resulted in the death of John Hayes and serious injuries to Donald Stevens and Wayne Rumsey. The complaint alleged that the accident was caused by the negligent and unlawful operation of defendants' automobile by their minor son, Allison C. Brower.

Plaintiff Hayes prayed for judgment against defendants in the sum of $10,767.

Plaintiff Stevens, as guardian *ad litem* of her minor son, prayed for judgment in the sum of $100,000, and, by a second cause of action, prayed for judgment, individually, in the sum of $28,473.53.

Plaintiff Rumsey, as guardian *ad litem* of his minor son, prayed for judgment in the sum of $10,000, and, individually, for judgment in the sum of $2,704.

By their answer, defendants admitted that their son, Allison C. Brower, was operating their automobile on the night of October 25-26, 1947, denying the other material allegations of each cause of action pleaded in the complaint and, particularly, that they were liable to plaintiffs or any of them in any sum whatsoever.

As to plaintiff Hayes' cause of action, defendants pleaded contributory negligence on the part of his son, John Hayes, and that, at the time of the accident, he was an invited guest in the automobile.

Answering the complaint of plaintiff Hattie L. Stevens, as guardian, defendants incorporated their answer to Mr. Hayes' complaint and, while admitting that Donald Stevens was injured, denied that his injuries directly and proximately resulted from the negligence of defendants or of their son Allison or that defendants were liable to plaintiff Stevens, as guardian *ad litem,* in any amount whatsoever. They further alleged that any injuries suffered by Donald Stevens were caused and contributed to by his own negligence; that, at the time of the accident, he was an invited guest in the automobile owned by defendants, and was a licensee without payment for transportation; and that the injuries which he suffered were not intentional on the part of Allison C. Brower.

Defendants also answered plaintiff Stevens' second cause of action, denying the material allegations thereof and, particularly, that she had been damaged in the amount demanded or in any sum whatsoever as the result of any negligence on the part of defendants or Allison Brower.

By way of an affirmative defense, defendants further alleged that any damages suffered by plaintiff Hattie L. Stevens were caused and contributed to by the negligence of her son Donald, repeating the allegations of their answer to her first cause of action.

Answering the complaint of plaintiff Wayne Rumsey, as guardian *ad litem* for his son, defendants denied liability and pleaded affirmatively, in their defense, the same allegations contained in their answers to the other causes of action referred to above.

By their reply, plaintiffs denied the affirmative allegations contained in defendants' answer to each cause of action, and prayed for judgment as demanded in their complaint.

The action was tried to the court, sitting without a jury. By an oral decision at the close of the trial, the court, after stating its opinion as to the respective amounts of damages to plaintiffs occasioned by the accident, and discussing other pertinent questions, stated that, under the facts disclosed by the evidence, John Hayes and the other two minors, represented here by their guardians *ad litem,* were guests in defendants' automobile, which was driven by their son, and that plaintiffs should not recover judgment in the action.

Plaintiffs' motion for a new trial, their motion for judgment notwithstanding the oral decision of the court, and their motion for reconsideration of the court's oral decision having been denied, the court entered findings of fact and conclusions of law in favor of the defendants, followed by a judgment dismissing the action with prejudice, to which judgment plaintiffs excepted and from which they have appealed to this court, making the following assignment of errors:

"(1) The court erred in concluding that Orlob's offer to purchase gasoline did not motivate the transportation provided by Brower.

"(2) The court erred in concluding that at the time and place in question Hayes, Rumsey and Stevens were 'the invited guests' of Brower.

"(3) The court erred in concluding that the transportation in question was being furnished by Brower without payment for such transportation.

"(4) The court erred in concluding that Brower 'did not purposely intend to injure the occupants of said automobile.'

"(5) The court erred in concluding that by virtue of Remington's Revised Statutes, § 6360-121, appellants had no cause of action.

"(6) The court erred in not concluding that the defendants had, by reason of their own unlawful acts and those of their son, put themselves without the pale of the protection afforded by the Host-Guest Statute.

"(7) The court erred in entering a judgment of dismissal."

The trial court made comprehensive findings of fact, finding that respondents were husband and wife; that they had a son, Allison C. Brower, Jr., who, at the time of the accident, was sixteen years of age and a member of their family; and that the respondents owned a 1939 two-door Ford sedan automobile, bearing a 1947 Washington license, which they maintained for the use of their family, including their son Allison.

Appellants assign no error upon any finding of fact made by the trial court. We quote findings Nos. 3 to 10, both inclusive, which state the facts upon which this action was based:

"(3) That of the public streets and highways of the City of Seattle, California Avenue extends in a general northerly and southerly direction. That said avenue is intersected at right angles by another public street in the City of Seattle known as Admiral Way, and several blocks to the south of Admiral Way is interesected at right angles by another public street known as Alaska Street, which intersection is commonly called 'The Junction'.

"That at all times herein mentioned the said streets were open to the public for travel thereon.

"(4) That the defendants, after acquiring said automobile and due to mechanical damage sustained in its motor, caused the Ford motor therein to be removed and a new Mercury motor installed, and did not thereafter comply

with the provisions of Remington's Revised Statutes, Sections 6312-4, 6312-5 and 6312-15, pertaining to procedures required in the event a new motor is installed in a motor vehicle, in that the defendants did not forward and surrender to the proper authorities of the State of Washington the certificate of license registration theretofore issued to the defendants covering the operation of said automobile, and, likewise failed to make application for the issuance of a corrected certificate of license registration and corrected certificate of ownership, and failed to furnish the proper authorities of the State of Washington a statement concerning the disposition made of the former Ford motor. That solely by reason of the failure on the part of said defendants to comply with the foregoing statutory provisions, the said car was at all times thereafter and at the time of the accident hereinafter described unlawfully operated on the public streets and highways in the State of Washington.

"(5) That defendants on October 25th, 1947, and subsequent to the installation of said Mercury motor, entrusted their said automobile to their son, Allison C. Brower, Jr., to be used by him. That on said date and at the time of the collision hereinafter mentioned, said automobile was being operated by the said Allison C. Brower, who was then a member of the family and household of the defendants.

"That on October 25th, 1947, John Kelly Hayes, now deceased, son of the plaintiff James O. Hayes, in company with Wayne Henry Rumsey, son of the plaintiff Rumsey, and one Lloyd Orlob, attended a dance at Franklin High School in the City of Seattle. That at said time Hayes was 17 years and 8 months old and Rumsey was 16 years of age.

"That Allison C. Brower, Jr., did not attend said dance. That after the dance Hayes, Rumsey and Orlob went to a place known as Red's Cafe at the intersection of California Avenue and Admiral Way in the City of Seattle, where by chance they met a friend and acquaintance, one Donald Wallace Stevens, age 17.

"That Hayes, Rumsey, Stevens and Orlob, while in said cafe, at about 1.05 A.M. October 26th, 1947, observed the last bus, the route of which was south on California Avenue to Alaska Street, pull up at the bus stop and at said time they were under the necessity of getting to the intersection of California Avenue and Alaska Street, a distance of some twelve blocks from the said Red's Cafe in order that Hayes, Rumsey and Stevens could catch the last bus departing from that intersection in the direction of their respective

homes. That the said Orlob lived in the vicinity of the intersection of California Avenue and Alaska Street.

"(6) That at said time and place Allison C. Brower, Jr., was sitting in the aforesaid automobile, unaccompanied, which automobile then was on private property just north of Red's Cafe. That said Orlob, without previous discussion with Hayes, Rumsey and Stevens, but acting for and on behalf of Hayes, Rumsey and Stevens, requested the said Brower to drive them in said automobile from said place to the intersection of California Avenue and Alaska Street, then and there stating to the said Brower, in substance, 'We would be glad to pay for some gas if you would like'. That at said time Orlob was standing near the right door of said automobile which was closed and locked. That said Brower then and there unlocked and opened said door and made no verbal response whatsoever to the statement of Orlob and did not utter one single word before he put his automobile in motion three or four seconds thereafter.

"That when said door was opened Hayes, Rumsey, Stevens and Orlob got in said automobile.

"That said Brower at said time and place did not want said boys in his automobile and mentally objected to having them enter his automobile and extended no verbal invitation to any of said boys to enter said automobile or to ride therein but did open the doors of said automobile. That said Brower had a speaking acquaintance only with some of said boys, none of whom had ever ridden in said automobile before, and none of whom he associated with socially. That except for the said Orlob the purpose of said boys in getting into said automobile was to get a ride to 'The Junction' in order to catch the last bus and thus reach their respective homes.

"That so far as Orlob knew at the time and place in question there were no gasoline stations open along the intended route.

"That prior to said boys' entering the said automobile, Brower intended to return to his home, which was in the same general direction as the route taken, but that in taking said boys to 'The Junction' he would have to traverse an additional distance of approximately ten blocks in order to return to his home.

"(7) That after Hayes, Rumsey, Stevens and Orlob entered said automobile, which was then on private property facing east toward California Avenue, a car came south on California Avenue and stopped just north of the front of Brower's automobile and an occupant of said car uttered

a challenge to Brower to race south on California Avenue, which challenge Brower immediately accepted by putting his car in motion immediately. That said Brower's automobile was thus put in motion within a few seconds after Hayes, Rumsey, Stevens and Orlob got in said automobile, and that they, and neither of them, had any opportunity whatsoever to get out of said automobile or to prevent the said Brower from engaging in said race. That during said three-second period none of said boys made any protest against said race at that time.

"(8) That the said Brower, after starting the race, increased the speed of said automobile so that within one block after commencing he was driving at 55 miles per hour and shortly thereafter attained speeds in excess of 75 miles per hour; that shortly after the said race began one of the passengers stated, in substance, 'We're doing 55; take it easy, you'd better slow down,' and that shortly after starting said race another of the boys stated, in substance, 'You're doing nothing but the screaming eighty—we're going kind of fast, aren't we?'; another further stated, 'Take it easy, you have our lives in your hands'; that after traversing a distance of approximately seven blocks the said Brower drove his automobile into a parked automobile and then into a utility pole, killing Hayes and seriously and permanently injuring Rumsey and Stevens.

"(9) That said Brower at said time and place was grossly negligent in the operation of his said automobile and drove the same at a highly dangerous and excessive rate of speed. That said Brower at said time and place drove his said automobile in wanton and willful disregard of the rights and safety of the occupants of said automobile.

"(10) That said automobile belonged to the· defendants and was, at the time Hayes, Rumsey, Stevens and Orlob entered it, being unlawfully operated upon the highways of the State of Washington at said time and place due to the failure on the part of the defendants to comply with the statutory provisions hereinbefore set forth."

The findings concluded by stating the amount of damages suffered by appellants, respectively.

The foregoing quotation from the findings of fact clearly and comprehensively shows the circumstances surrounding the accident which was the basis of this action, and is a concise statement of the evidence introduced at the trial.

The trial court then entered its conclusions of law, Nos. 1 and 2 reading as follows:

"(1) That the offer to purchase gasoline made by Lloyd Orlob did not motivate the transportation provided by defendants' son, Allison C. Brower, Jr.

"(2) That John Kelly Hayes, Wayne Henry Rumsey and Donald Wallace Stevens were at the time they entered the defendants' automobile and at the time of the accident on October 26, 1947, the invited guests of defendants' son, Allison C. Brower, Jr., and were being transported by said Allison C. Brower, Jr., without payment for such transportation."

By its conclusions Nos. 3 and 4, the court stated that Brower, Jr., was grossly negligent in the operation of the automobile, driving it at a highly dangerous and excessive rate of speed, and in wanton and wilful disregard of the rights and safety of the occupants of the car, "but that said Brower did not purposely intend to injure the occupants of said automobile"; that, at all times after the installation of a Mercury motor in the Brower automobile, it was unlawfully operated upon the public streets and highways, due to the failure of respondents to comply with the statutory provisions mentioned in finding of fact No. 4; and that, from the time the automobile left private property and entered upon California avenue until the collision occurred, it was unlawfully operated upon the public highway by reason of the further fact that Brower, Jr., was engaged in a race upon a public street of the city of Seattle, in violation of Rem. Rev. Stat., Vol. 7A, § 6360-67 [P.P.C. § 296-7], and the ordinances of the city of Seattle.

The court's conclusions Nos. 5 and 6 read as follows:

"(5) That by reason of the above-mentioned relationship existing between the defendants' son and John Kelly Hayes, Wayne Henry Rumsey, and Donald Wallace Stevens, the plaintiffs herein have no cause of action for damages against the defendants by virtue of the provisions of Remington's Revised Statutes, Section 6360-121.

"(6) That each of the plaintiffs has suffered damages in the amount set forth in the foregoing Findings of Fact as the result of the negligence of the said Allison C. Brower, Jr., but that by reason of the aforesaid Remington's Revised

Statutes, Section 6360-121, said plaintiffs have no cause of action against the defendants."

The trial court then entered the judgment from which appellants have appealed. Appellants excepted to the entry of the judgment and their exception was allowed.

Allison C. Brower, Jr., was called by appellants as an adverse witness. After testifying concerning his operation of the car on the night in question, he stated that he parked the car as stated by the trial court in its findings, and was sitting in the car, the door being locked, when Lloyd Orlob came to the car, "wiggled" the right-hand door handle, and indicated that he wanted a ride to the "Junction." Appellants' counsel asked the witness what he did after ascertaining what Orlob wanted, to which the witness answered, "I thought about it." Brower testified that he then opened the door; that he said nothing to Orlob; that no one of the other three boys said anything to the witness; and that the four boys then entered the car. The witness stated that he knew all of the boys, but had never associated with any of them nor had any one of them ever ridden with the witness in the automobile. He testified that he had some mental objection to taking the boys to the "Junction," because he wanted to go home, but that he did not say anything concerning this thought. During the direct examination of the witness, the following occurred:

"Q. The question is, why didn't you tell them you objected to them getting into the car? A. Because they are all older than me, and there is not much you can tell four guys when they want a ride to the Junction. I was usually in the habit of taking people where they wanted to go. Q. You say there were four of them; you objected plenty but you didn't tell them because there were four of them there? Do I understand by that that you meant you had some fear of them? A. No, not fear. I just wanted to do them a good deed. Q. Where does the fact there were four of them make any difference in the matter of overcoming your objection then, sir? A. There is not much you can tell four guys that want a ride down to the Junction. Q. If you told them no— A. They would probably argue with me."

When called as a witness by respondents, Brower testified as follows concerning the conversation between himself and Orlob:

"Q. What was the conversation? A. He wanted to ride down to the other Junction. Q. Was there any other conversation respecting the ride? A. No. Q. You have heard Lloyd Orlob's testimony here? A. Yes, I have. Q. Was there any conversation or any offer to buy gas or pay you anything for that ride? A. No, there wasn't."

Appellants' counsel did not cross-examine the witness.

In paragraph No. 10 of their complaint, appellants alleged that Orlob, on behalf of himself and the other three lads, requested Brower to drive them to the intersection of California avenue and Alaska street,

" . . . then and there offering to pay the said Brower for the aforesaid transportation by buying gasoline for the said Brower. That said Allison C. Brower then and there accepted the said offer so made, and upon the acceptance of said offer Hayes, Rumsey, Stevens and Orlob entered said automobile and became passengers therein."

By their answer, respondents denied that Orlob made any offer to Brower to buy gasoline or that Brower accepted any such offer.

In their affirmative defenses, respondents pleaded the host-guest statute and that, at the time of the accident, Hayes, Stevens, and Rumsey were invited guests in the automobile, without payment for transportation; that the injuries suffered by the boys were not intentional on the part of Brower; and that the appellants were barred from any recovery in the action by the laws of this state.

These allegations were denied by appellants in their reply.

As pleaded in their affirmative defense to appellants' complaint, respondents rely upon Laws of 1937, chapter 189, § 121, p. 911, Rem. Rev. Stat., Vol. 7A, § 6360-121 [P.P.C. § 295-95], which reads in part as follows:

"No person transported by the owner or operator of a motor vehicle as an invited guest or licensee, without payment for such transportation, shall have cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have

been intentional on the part of said owner or operator: . . ."

Appellants contend that this statute, being in derogation of the common law, must be strictly construed; that the burden rested upon respondents to establish this defense; and that, at most, the evidence in the case at bar was evenly balanced and did not preponderate in favor of respondents.

Appellants argue that, by opening the door of the automobile, Brower accepted Orlob's offer to purchase gasoline. They also argue that, in order to constitute carriage of a person in an automobile for compensation, there need be no previous contract, if the transportation be motivated by the expectation of material or other benefit, and that, as the trial court found that Orlob offered to buy gasoline, without indicating that the offer was limited to the amount which would be consumed during the ride of a few blocks to the "Junction," respondents are not entitled to the benefit of the host-guest statute.

Respondents contend that the trial court properly ruled that, by opening the door of the automobile and permitting Orlob and the other lads to enter, Brower was not motivated by any expectation of benefit, and that the indefinite offer to purchase gasoline, made by one school acquaintance to another, did not create a status of transportation for hire or change the situation from that of host and guests.

As above stated, appellants affirmatively pleaded that Orlob offered to buy gas for Brower and that the offer was accepted. These allegations were denied by respondents in their answer, and, by affirmatively pleading the host-guest statute, respondents did not assume the burden of affirmatively proving, by a preponderance of the evidence, that the host-guest relationship existed between Brower and the four lads. The burden of proving the agreement to buy gas, as consideration for the transportation asked for, at all times rested upon appellants.

We have held that, unless a passenger in an automobile is a guest or licensee within the terms of the statute, his exact status is immaterial, in so far as questions arising

under the host-guest statute are concerned. *Forman v. Shields,* 183 Wash. 333, 48 P. (2d) 599; *Pence v. Berry,* 13 Wn. (2d) 564, 125 P. (2d) 645.

█  It is also true that, if a person is transported in an automobile for direct compensation received or expected to be received by the person operating the car, the amount or value of such compensation is not material. *Parrish v. Ash,* 32 Wn. (2d) 637, 203 P. (2d) 330.

In the case last cited, this court affirmed a judgment in favor of the plaintiff in an action for personal injuries and a wrongful death resulting from an automobile collision, the jury having returned a verdict in favor of the plaintiff based upon evidence that the driver of the car expected a payment of ten cents for carrying the person injured. In the course of the opinion, we said:

"Whether one who is being transported in a motor vehicle is a passenger for hire or is a guest or licensee, within the contemplation of a statute relating to the liability of the owner or operator of such vehicle for injury to an accompanying guest or licensee, depends largely upon the facts and circumstances of the particular case."

In *Fuller v. Tucker,* 4 Wn. (2d) 426, 103 P. (2d) 1086, we held that, to recover damages against the owner of an automobile in which the plaintiff was riding pursuant to an arrangement between plaintiff and the owner of the car, the plaintiff must, in order to remove herself from the guest status and claim damages resulting from an injury received during the trip, show that some compensation, in a business sense, was to be received by the defendants. We quote from the opinion:

"There was no showing of an actual or potential benefit in a material or business sense resulting or to result to the respondents, and there is no evidence that the transportation of appellant was motivated by the expectation of such benefit."

The mere opening of the automobile door by Brower, thereby permitting the four boys to enter the car, was evidence before the trial court (who heard and saw the witnesses) which the court held was insufficient to support a

finding that Brower agreed to transport the boys for compensation.

In the case of *Scholz v. Leuer,* 7 Wn. (2d) 76, 109 P. (2d) 294, this court, by a five to four decision, affirmed a judgment entered in favor of the plaintiffs on the verdict of a jury in an action brought by plaintiffs to recover damages for the death of their minor daughter, due to a collision between the automobile in which she was riding and a truck. Referring to the host-guest rule, we said:

"If there is payment for the transportation, the statute does not apply, and this does not mean that payment must necessarily be made in money. It is sufficient if the presence of the occupant directly compensates the operator or owner in a substantial and material or business sense, as distinguished from mere social benefit or nominal or incidental contribution to expenses."

In 4 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.) 307, § 2292, appears the following text:

"One important element in determining whether a person is a guest within the meaning and limitations of such statutes is the identity of the person or persons advantaged by the carriage. If, in its direct operation, it confers a benefit only on the person to whom the ride is given, and no benefits, other than such as are incidental to hospitality, companionship, or the like, upon the person extending the invitation, the passenger is a guest within the statutes; but, if his carriage tends to the promotion of mutual interests of both himself and the driver and operates for their common benefit or if it is primarily for the attainment of some objective or purpose of the operator, he is not a guest within the meaning of such enactments. Of course, a passenger for hire is not within their operation, regardless of whether the passenger or some one else pays or promises to pay for the transportation.

"In other words, the term 'guest,' as it is ordinarily used in automobile guest statutes, imports that the occupant referred to is the recipient of the owner's or driver's hospitality."

Pursuant to the authorities above cited, it was incumbent upon appellants to show, by a preponderance of the evidence, first, that Brower would receive some benefit for

the transportation, and, second that this benefit was a motivating factor for his undertaking to carry the boys where they wished to go.

It does not appear that Brower purchased gas for the family car or that buying some gas would have anywise benefited him personally. There is no evidence that Orlob offered to purchase any definite amount of gas. Certainly, as stated by the trial court, the amount of gas required to proceed ten blocks would be insignificant.

The trial court found that Orlob said to Brower, " 'We would be glad to pay for some gas if you would like.' " Brower denied that any such statement was made to him.

Any such offer was certainly vague and indefinite in the extreme, and the trial court concluded that Orlob's offer did not motivate the transportation provided by Brower. Brower simply opened the door of the car, whereupon the four boys immediately entered. The four boys, although older than Brower, were his schoolmates, and wanted to be transported in the same general direction which Brower was about to follow. Brower testified that he had approached the cafe to see if there were any of his acquaintances there who would like to have a ride.

Upon the record before us, we hold that the trial court did not err in concluding that the four boys were riding in the Brower car as invited guests, and that the transportation in question was furnished by Brower without payment therefor.

Appellants strongly rely upon the case of *Upchurch v. Hubbard,* 29 Wn. (2d) 559, 188 P. (2d) 82. The defendant Hubbard was in the employ of the post office and drove a pickup truck, delivering parcel post packages in the city of Spokane. Upon the rear of the truck was a panel body, and on each side of the truck were a door and a running board. After stopping to deliver mail, Hubbard returned to the truck and saw Eldon Upchurch, an eight-year-old boy, standing on the right-hand running board. After some conversation, the lad stated: "I am going for a ride." To this Hubbard answered: "That is not a good idea, you had bet-

ter get off." However, the boy retained his position and the truck started. After proceeding a short distance and while the truck was in motion, the boy, who was facing the rear of the truck, stepped off the running board and was thrown to the pavement, suffering injuries from which he died.

The boy's parents sued Hubbard and others for damages for the death of their son, which they alleged had been caused by Hubbard's negligence in the operation of the truck. There was no dispute in the evidence, save as to the speed at which the truck was traveling when the boy stepped off the running board. Hubbard admitted that, prior to the accident, he knew that it was unlawful to transport any person upon the running board of any vehicle. The jury returned a verdict in favor of the plaintiffs, and, from a judgment entered upon the verdict, the defendants appealed.

The appellants contended before this court that, had the boy survived the accident and himself sued for the recovery of damages, he would have been barred from such recovery by the host-guest statute, *supra.*

In the course of the opinion, this court said that not only was it unlawful for Hubbard knowingly to transport the boy on any outside part of the truck, but it was also his positive duty to see that the boy left that position before the vehicle was put in motion, that his failure to perform this duty was, as found by the jury, a proximate cause of injury; and that any question of contributory negligence on the part of the boy had been eliminated by the verdict. Construing the host-guest statute, we said:

"As appears by the cases hereinabove cited, the purpose of that statute was to prevent collusive action between host and guest, committed with the intent to defraud casualty insurance companies; it was not the purpose of the statute to promote fraud or injustice by permitting one to claim immunity from liability for his negligence on the ground that he occupied a relationship which was exempt from liability, when that very alleged relationship was created by his own unlawful act. We believe that the legislature meant, and that the statute should be construed to mean, that to exempt the owner or operator of a motor vehicle

from liability for the injury to, or the death of, a person transported by him, the relationship alleged to exist between the owner or operator and the person transported must be a lawful one, or at least not an unlawful one, nor one dependant for its creation upon some unlawful act of the owner or operator himself. To hold otherwise would make the statute an instrument of gravest injustice, operating not as a shield but as a sword."

We held that Hubbard could not lawfully authorize the boy to ride upon the running board and that, therefore, Hubbard could not be a licensor nor the boy a licensee, within the meaning of those terms as used in the host-guest statute. The judgment appealed from was affirmed.

In the case cited, it clearly appeared that the driver of the truck started the vehicle, knowing that the boy was standing on the running board and that such a position was forbidden by law in connection with a moving automobile. The illegal relationship commenced and developed while the truck was standing on a public street. The situation, as observed by Hubbard prior to and at the time he started the truck, was perfectly open and was obviously most dangerous as far as the boy was concerned. This court held that Hubbard could not invoke the benefit of the statute, when his own unlawful act created the relationship of driver and driven, this relationship having been created when Hubbard put the truck in motion while the boy was standing on the running board.

In the case at bar, the relationship between the four boys and Brower became fixed when the boys entered the car, which was then standing on private property. That relationship was nowise changed when Brower drove the car onto the public street. In the *Upchurch* case, the relationship was unlawful *ab initio*. The case is not here in point.

Appellants apparently argue that the status of one riding in an automobile driven by another does not become fixed until the car is driven onto a public highway, and that, if the car enters such a highway in an unlawful manner, one who entered the car as a guest may no longer occupy

that status, and this without regard to whether the previous arrangement for the ride and the unlawful act were anywise related.

If such a principle were adopted, an invited guest entering a car standing on a private driveway or in a garage might well lose that status, if the car, when it entered upon a public highway, should be mechanically defective or even if it should be unlicensed.

The *Upchurch* case, *supra*, goes no further than to hold that the host-guest statute is not effective when some unlawful act on the part of the host inhered in the creation of the relationship.

■ This court has several times held that protests by a guest, based upon reckless driving by the operator of an automobile, do not terminate the relationship.

In the case of *Akins v. Hemphill*, 33 Wn. (2d) 735, 207 P. (2d) 195, it appeared that a sixteen-year-old girl, who accepted an invitation to ride extended by a friend, discovered soon after the journey commenced that her host-driver was under the influence of intoxicating liquor and was driving the automobile negligently. She several times demanded that the driver stop the car and allow her to leave the automobile, but, notwithstanding these requests, the driver continued on his reckless way, with the result that the car collided with a truck, the young lady being severely injured. In an action by the guardian *ad litem* for the injured girl, the trial court sustained a demurrer to the complaint, it not appearing that the injuries which she suffered were intentionally inflicted. On appeal by the plaintiff from an order dismissing the action, the judgment of the trial court was affirmed, this court, in an *En Banc* decision, holding that:

"The statute as construed by this court affords complete immunity to a host-driver except in the event the accident causing the injury to the guest shall have been intentional on his part, or the host-driver was demonstrating the motor vehicle to a prospective purchaser."

The cases of *Shea v. Olson*, 185 Wash. 143, 53 P. (2d) 615, *Parker v. Taylor*, 196 Wash. 22, 81 P. (2d) 806, and *Taylor*

*v. Taug,* 17 Wn. (2d) 533, 136 P. (2d) 176, are to the same effect.

In *Bateman v. Ursich,* 36 Wn. (2d) 729, 220 P. (2d) 314, this court, sitting *En Banc,* held that the host-guest statute applied, even though the relationship was initiated pursuant to unlawful acts on the part of both the plaintiffs and the defendant. In the course of the opinion, we said:

"The legislature, in enacting the host-guest statute, saw fit to specify only three exceptions to its operation: (1) where the transportation is given in consideration of payment by the person transported; (2) where the accident shall have been intentional on the part of the owner or operator of the vehicle; and (3) where the vehicle shall at the time be in the process of being demonstrated to a prospective purchaser."

The court distinguished the case on the facts from the *Upchurch* case, *supra.*

We hold that the transportation in the case at bar was not given in consideration of payment, and that, from the record, it certainly cannot be held that the accident was intentional on the part of Brower.

Finally, appellants contend that respondents may not claim the benefit of the host-guest statute, because the Brower automobile was being unlawfully operated upon the highways for the reason that the owners, after having a new Mercury motor installed in the car, did not comply with the statute by making application for the issuance of a corrected certificate of license registration and so forth, all as found by the trial court in its findings Nos. 4 and 10, *supra.*

In *Lewis v. Bertero,* 194 Wash. 186, 77 P. (2d) 786, this court said:

"It is further urged as a bar to recovery that, under the statute (Rem. Rev. Stat., §§ 6382, 6385, 6388 [P.C. §§ 235, 238, 234-4]), it was unlawful for Hinderman to carry the three occupants of his automobile as passengers for hire. Assuming, but not conceding, that the statute invoked prohibits, in the absence of a license therefor, the carrying of persons as in the case at bar for compensation, inasmuch as the violation of the statute was not a proximate cause of

the collision, appellants may not successfully urge the violation of the statute as a defense to this action. This rule is so well established that it is deemed unnecessary to cite sustaining authority."

In the case of *Berry v. Farmers' Exchange of Walla Walla,* 156 Wash. 65, 286 Pac. 46, this court held that violation of a city ordinance requiring fire escapes on apartment houses did not render the owner of the building responsible to a tenant, who was trapped in a room by an accidental fire in the doorway and jumped from the window to escape the fire, being thereby injured, for the reason that there was no causal connection between the violation of the ordinance and the injury.

In *Switzer v. Sherwood,* 80 Wash. 19, 141 Pac. 181, an action for damages suffered as the result of a collision between a motorcycle which the plaintiff was riding and an automobile, this court held that, under the situation disclosed by the evidence, the fact that the plaintiff was operating his motorcycle on the public highway without first obtaining the required license did not bar his recovery of damages suffered because of the collision. After saying that the violation of the revenue part of the statute was an offense against the state only, and that the state alone might enforce the penalty, the court continued:

"In other words, before the violation of the statute by the person injured will constitute a defense to the negligent act of the person injuring him, there must be shown some causal connection between the act involved in the violation of the statute and the act causing the injury. Here there was no such causal connection. The injury would have happened in the same manner it did happen had the respondent theretofore paid the license fee due the state and been in possession of the statutory license."

The cases of *Koch v. Seattle,* 113 Wash. 583, 194 Pac. 572, and *White v. Kline,* 119 Wash. 45, 204 Pac. 796, are to the same effect.

In the *Switzer* case, the plaintiff recovered damages regardless of the fact that he was operating his motorcycle without a license. In the *Koch* and *White* cases, the owners

of motor vehicles were allowed to recover damages although the persons operating the cars were without legal authority to drive a motor vehicle.

In the case at bar, appellants rely upon an alleged disqualification of the automobile which Brower was driving.

In the three cases cited, the fact that the respective drivers were improperly operating the motor vehicles did not prevent the recovery of damages based upon the negligence of the respective drivers of the other motor vehicles involved. Therefore, in the case at bar, the fact that the Brower car was not properly licensed does not require a holding that this circumstance, which had absolutely nothing to do with the accident, would change the status of host and guest existing between Brower and the three injured boys or would, in any manner, increase respondents' responsibility in the premises.

This last contention of appellants is without merit.

The trial court did not err in dismissing the action, and the judgment appealed from is affirmed.

HILL and DONWORTH, JJ., concur.

FINLEY, J. (dissenting)—It has been said that the reason for the enactment of the so-called host-guest statute was the prevention of collusive lawsuits. There is truth in this. But more likely the statute was enacted because of the interest of insurers and activities in their behalf around legislature time. This is not intended as a criticism. It is merely a comment respecting the probable background and purpose of the host-guest act. The rash of lawsuits a number of years ago in connection with automobile accidents, pitting friends and even relatives against each other, occasioned by the phenomenon of automobile driver or owner insurance, was bound to affect automobile insurance rates sooner or later.

A substantial segment of our population own automobiles. Consequently, the cost of automobile insurance is of real and legitimate concern, both to them and to the legislature. Whether an expression of state policy on this problem through legislative enactment was right or desirable, does not now seem to be a question of judicial concern. The host-

guest statute was enacted. Basic state policy was determined thereby, legislatively. Nevertheless, the interpretation and application of the legislation may be a matter of some considerable judicial interest and concern.

·Host-guest legislation appears to have been initiated in this country during 1927 in Connecticut, Iowa, and Oregon. The Washington act seems to have been closely patterned after the Connecticut legislation. For purposes of comparison, the pertinent parts of the two statutes are set forth.

The Washington statute, Laws of 1937, chapter 189, § 121, p. 911, cited as Rem. Rev. Stat., Vol. 7A, § 6360-121 [P.P.C. § 295-95], reads:

"No person transported by the owner or operator of a motor vehicle as an invited guest or licensee, without payment for such transportation, shall have cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator: *Provided,* That this section shall not relieve any owner or operator of a motor vehicle from liability while the same is being demonstrated to a prospective purchaser."

The Connecticut statute, Laws of 1927, chapter 308, read in part as follows:

"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator *or caused by his heedlessness or his reckless disregard of the rights of others.*"

Two separate and distinct exceptions were written into the Connecticut act. First, when the injury to the passengers was intended by the automobile owner or operator, or second, when the injury resulted from conduct that was heedless and in reckless disregard of the rights of others, the statute was not a bar to the recovery of damages by a passenger. *Silver v. Silver,* 108 Conn. 371, 143 Atl. 240; *Bordonaro v. Senk,* 109 Conn. 428, 147 Atl. 136. .

The Connecticut digest cites approximately fifty cases under the section on the host-guest statute. A reading of

these shows that not one was brought under the first exception of the Connecticut host-guest statute. In a majority of the Connecticut cases involving the second exception, the court or jury held that the acts of the driver were not such as to amount to "heedlessness" or "reckless disregard of the rights of others," and denied recovery.

The Connecticut statute was in effect about ten years. It was repealed in 1937. As indicated above, so far as I have been able to discover, the Connecticut court never found that conduct of a driver of an automobile fell within their interpretation of the word "intentional," as used in their statute. Obviously, the second exception offers more leeway or more favorable possibilities to plaintiff-passengers interested in overcoming the bar of the statute and seeking recovery of damages for injuries than does the first exception.

The Washington state enactment omitted entirely the second—less burdensome to plaintiff—exception. It did incorporate or include the first—more burdensome, if not impossible, to plaintiff—exception. *Shea v. Olson,* 185 Wash. 143, 53 P. (2d) 615, held that the intent required by our statute was the intent *to cause the injury,*—not merely an *intent to do the act that caused the injury.* And, as a matter of fact, our court has never permitted recovery by a passenger because his injuries were intended by the car owner or operator.

At the present time, our host-guest act is the most severe of any state. The Kentucky statute was as harsh, but it was declared unconstitutional. For some reason, perhaps because of the severity of our statute, or in order to do justice, we have permitted recovery somewhat liberally on the basis of "payment for such transportation." Thus, plaintiffs have been removed from the status of a guest, and the statutory barrier to recovery has been eliminated. For example, the expectation of plaintiff to pay ten cents for a ride on the day of the accident because she paid ten cents the day before, *Parrish v. Ash,* 32 Wn. (2d) 637, 203 P. (2d) 330; and the offer by the plaintiff to do the driver's washing

in return for a ride, *Rose v. Chapman,* 19 Wn. (2d) 744, 144 P. (2d) 248.

In the instant case, there was an offer to pay for gas. The majority believes that this offer did not motivate defendant's generosity nor prompt him to give the boys a ride. The aforementioned cases could, perhaps, be stretched to cover the instant situation; however, it would seem that in reaching the result in those cases, the court stretched far enough and there should be a stopping point. So, perhaps, as the Walrus said, "The time has come."

After the "payment" cases, came an about-face in *Akins v. Hemphill,* 33 Wn. (2d) 735, 207 P. (2d) 195, where, although a logical basis existed on which to permit recovery, it was denied. In that case, a sixteen-year-old girl who had accepted a ride with a young man friend thereafter immediately discovered that her host-driver was under the "influence" and was driving with extreme negligence. She requested, demanded and pleaded with him to stop and allow her to get out. He paid no attention, but continued, recklessly, to drive in wanton, willful disregard of the young girl's safety. There was a bad collision. The girl was very severely injured. This court, sitting *En Banc,* in a six to three decision stated in effect (as indicated in the dissenting opinion of Judge Steinart) that " 'once a guest, always a guest,' throughout the entire journey, no matter how great or how conscientious an effort the person may make to terminate the relationship," and that recovery was barred by the host-guest statute. It was suggested in the dissent that the repeated demands of the girl to be let out of the car classified her as a person being forcibly abducted rather than as an "invited guest." With that I agree.

In this connection, it is my belief that no one would be more surprised by the decision in the *Akins* case than those individuals who were members of the legislature when the host-guest act was passed. This is not to say that the legislature was unaware of the possible problem of collusive automobile accident lawsuits or their possible effect upon automobile insurance rates, or that the legislature did not

intend to afford some appropriate protection to insurance companies by an effective legislative declaration of public interest and state policy. In other words, it is my judgment that the legislature did not intend results as extreme as the one in the *Akins* case, but did intend to afford some relief to insurance companies by providing reasonable and significant restraints upon guest-driver personal injury lawsuits.

Justice reared its head again in *Upchurch v. Hubbard,* 29 Wn. (2d) 559, 188 P. (2d) 82, commented upon at length in the majority opinion. Briefly, defendant, in violation of statute, permitted plaintiff to ride on the running board of his truck, from which plaintiff fell, receiving fatal injuries. We held plaintiff was not a guest, and that defendant, by his unlawful act, deprived himself of the protection of the statute, saying:

"We believe that the legislature meant, and that the statute should be construed to mean, that to exempt the owner or operator of a motor vehicle from liability for the injury to, or the death of, a person transported by him, the relationship alleged to exist between the owner or operator and the person transported must be a lawful one, or at least not an unlawful one, nor one dependent for its creation upon some unlawful act of the owner or operator himself." (P. 566)

Disapproval of the "once a guest, always a guest" rule of the *Akins* case has been indicated above; furthermore, it is my belief that *Akins v. Hemphill* should be overruled at this time. By so doing and by extending and qualifying the "unlawful" act approach of the *Upchurch* case, a contrary result should be reached in the case before us. The *Upchurch* case utilized an unlawful act to prevent the inception of the relationship of host-guest. There should be no significant difference in fact or in theory between the matter of the inception of the host-guest relationship and the matter of its termination; and no reason why an unlawful act may prevent inception but cannot accomplish termination.

With the odious rule of *Akins* out of the way, a host-guest relationship, although once established in the contempla-

tion of the law, nevertheless, may be terminated. One method of termination lies in the facts of the *Akins* case, that is, repeated protests by the guest and requests to be let out. Another is to be found under the "unlawful" act reasoning of *Upchurch*. As mentioned above, this necessitates extending and qualifying the *Upchurch* case—extending it to termination cases and qualifying it in such cases by requiring that the unlawful act should involve willful, wanton, and reckless disregard of the rights and safety of others. In the instant case, defendant was violating a city ordinance and a statute prohibiting auto racing on public thoroughfares, and the trial court found that defendant was driving greatly in excess of the speed limit, an unlawful act; and that this unlawful act was done "in wanton and willful disregard of the rights and safety of the occupants of said automobile."

The only unlawful act considered by the majority in the case at bar is the failure of defendant to comply with certain licensing requirements relative to replacement of automobile motors. They distinguish the *Upchurch* case on the ground that the unlawful act in that case was the proximate cause of the injury, while the licensing violation in the instant case was not. It is my opinion that the status of the parties in the *Upchurch* case was determined entirely independently of the doctrine of proximate cause. It was determined solely on the basis of the unlawful act. For this reason, the proximate cause cases cited by the majority do not appear to be in point. But if proximate cause should be regarded as an essential element, the unlawful act I wish to emphasize, the violation of the speed limits and the racing ordinance and statute, can be considered the proximate cause of the accident in the case at bar.

The unlawful act of defendant, in wanton, willful disregard of the rights and safety of his passengers, should be held to have terminated the host-guest relationship and to have removed defendant from the protection of the statute. I believe that such a result would serve to eliminate

an occasional injustice without precipitating a wholesale perversion of justice.

SCHWELLENBACH, C.J. (concurring in the result)—I am in sympathy with the views expressed in Judge Finley's dissent, but feel that the repeated decisions of this court interpreting the host-guest statute preclude a result other than that arrived at by the majority.

If the injustices enumerated by Judge Finley are to be relieved, it will require legislative action.

December 18, 1951. Petition for rehearing denied.