[No. 34920.    *En Banc.*    October 15, 1959.]

CECELIA NOGOSEK, *Appellant,* v. WILLIAM G. TRUEDNER
*et al., Respondents.*[1]

*Merges & Brain (Edward E. Merges,* of counsel), and *Eugene Zelensky,* for appellant.

*Leo M. Koenigsberg* and *Robert J. Allerdice,* for respondents.

*Paine, Lowe, Coffin & Herman (Eldon H. Reiley,* of counsel), *amici curiae.*

[1]Reported in 344 P. (2d) 1028.

HUNTER, J.—This is an appeal from a judgment entered on a jury verdict in favor of the defendants, in an action brought by the passenger of an automobile against the driver and her husband for personal injuries resulting from a head-on automobile collision August 16, 1956, about four miles south of Mount Vernon, Washington, on state highway No. 99.

Plaintiff Cecelia Nogosek and defendant Gladys Truedner (hereafter referred to as the sole defendant) were good friends, both residing in Seattle. Prior to the accident in question, the plaintiff arranged with the defendant to accompany her on a trip to Vancouver, British Columbia, to pick up defendant's niece. The testimony is in dispute as to details of the arrangement but it was plaintiff's version that she agreed to help share expenses of the trip if it was made on her day off. The trip was made accordingly but no money was paid to the defendant in advance. Returning from Vancouver in the late afternoon, they stopped at Blaine, Washington, where the plaintiff purchased a "fifth" of whiskey. She imbibed frequently from thereon to the scene of the accident, which occurred about six-thirty that evening (August 16, 1956), at which time, according to the defendant's testimony, the plaintiff was intoxicated, and talked in a loud and incoherent manner. Defendant admitted she (defendant) consumed two drinks. The defendant further testified that while driving on a straight stretch of road, at a speed of approximately fifty miles per hour, she started to pass a car going in the same direction; that at that time she observed an approaching car about four blocks away; that when the front end of her car was in a position parallel with the back end of the car she was passing, the plaintiff, who was sitting in the front seat next to the niece, made a terrifying scream. In the defendant's words: " . . . she frightened me half to death and I looked over at her and automatically slammed on the brakes. . . . " Defendant thereupon lost control of the car which careened from one side of the road to the other until she was struck by the approaching automobile. Plaintiff sustained severe in-

juries and had no recollection of what happened on the day of the accident and for several weeks thereafter.

' In addition to a verdict for the defendant, the jury brought in answers to the following special interrogatories submitted by the court:

"INTERROGATORY No. 1:

"Was the defendant Gladys Truedner negligent?
"ANSWER: *Yes* ('Yes' or 'No')

"INTERROGATORY No. 2:

"Was the plaintiff Cecelia Nogosek contributorily negligent?
"ANSWER: *No* ('Yes' or 'No')

"INTERROGATORY No. 3:

"Was there payment or an agreement to pay for transportation between plaintiff Cecelia Nogosek and defendant Gladys Truedner?
"ANSWER: *Yes* ('Yes' or 'No')

"INTERROGATORY No. 4:

"Was the expectation of receiving payment one of the motivating factors for defendant Gladys Truedner furnishing the transportation at the time in question?
"ANSWER: *No* ('Yes' or 'No)"

The plaintiff appeals.

Appellant contends that the answers to interrogatories Nos. 1, 2 and 3, are inconsistent with the general verdict for the respondent and that she is entitled to a new trial on the issue of damages only.

Appellant argues that, in answering interrogatory No. 3, the jury actually answers interrogatory No. 4; that the latter is merely surplusage; that the court defined payment by instruction No. 12, and that the finding of payment by the jury under this definition, by its answer to interrogatory No. 3, was sufficient to remove this case from the purview of our 1937 host-guest statute, RCW 46.08.080.

That part of instruction No. 12 referred to by the appellant reads as follows:

" '*Payment for such transportation*' means an actual or potential benefit in a material or business sense to the owner or driver of the car, as distinguished from a mere social benefit, expression of neighborliness between the parties or incident contribution.

"Such payment does not necessarily have to be in money. Although actual payment need not have been made before the happening of an accident, the agreement for payment, if any, must precede the accident.

"*Furthermore, the expectation of such payment, if any, must be a motivating factor in the furnishing of the transportation at the time in question.*

"*Considering the foregoing factors, you are to determine whether the plaintiff made payment for her transportation or had an agreement for same and such payment or agreement for same was a motivating factor in the furnishing of the transportation at the time in question or whether she was an invited guest.*" (Italics ours.)

■ The appellant argues that since the jury found payment or a promise to pay as it did when it answered interrogatory No. 3 in the affirmative, it must also have found a benefit in a business sense to include *motivation,* in the light of the above definition of payment which it was required to follow by this instruction. We disagree. The instruction read in its entirety correctly states the rule essential to the establishment of the business relationship between the driver of a car and a passenger, sufficient to avoid the bar of the host-guest statute. The instruction contains the two requirements essential to the establishment of this relationship as set forth in *Fuller v. Tucker,* 4 Wn. (2d) 426, 103 P. (2d) 1086 (1940), wherein we said:

"The question presented in the case at bar is foreclosed by our opinion in *Syverson v. Berg, supra* [194 Wash. 86, 77 P. (2d) 382]. In that case, we held that, to take a person riding with another out of the guest class—show 'payment for such transportation' (§ 1, chapter 18, Laws of 1933)—two requirements are necessary: (1) *An actual or potential benefit in a material or business sense resulting or to result to the owner,* and (2) *that the transportation be motivated by the expectation of such benefit.*" (Italics ours.)

Also, see *Iron v. Sauve,* 27 Wn. (2d) 562, 179 P. (2d) 327 (1947); *Parrish v. Ash,* 32 Wn. (2d) 637, 203 P. (2d) 330 (1949); *Hayes v. Brower,* 39 Wn. (2d) 372, 235 P. (2d) 482, 25 A. L. R. (2d) 1431 (1951); *McUne v. Fuqua,* 42 Wn. (2d) 65, 253 P. (2d) 632 (1953); *Peterson v. Thorvaldsen,*

45 Wn. (2d) 376, 274 P. (2d) 844 (1954); *Nielson v. Harkoff*, 47 Wn. (2d) 205, 287 P. (2d) 95 (1955); *Woolery v. Shearer*, 53 Wn. (2d) 156, 332 P. (2d) 236 (1958).

■ In the instant case, by answering interrogatory No. 3 in the affirmative, the jury found only the existence of the first requirement stated in instruction No. 12: " 'Payment for such transportation' means an actual or potential benefit in a material or business sense . . . " The second essential requirement stated in instruction No. 12 that " . . . such payment or agreement for same was a motivating factor in the furnishing of the transportation at the time in question . . . " was answered in the negative by interrogatory No. 4. The jury thereby found that the second requirement essential to remove the plaintiff from the operation of our 1937 host-guest statute was not present under the facts of this case.

■ The appellant further contends, however, that the 1957 host-guest statute, RCW 46.08.080, operates retrospectively, and the trial court erred in not submitting her proposed instruction No. 8 to the jury, embracing the issue of the respondent's liability on the grounds of gross negligence. (Under the prior 1937 act, liability of the host to the guest for gross negligence did not exist.) The answer to appellant's contention is contained in the recent case of *Hammack v. Monroe Street Lbr. Co.*, *ante* p. 224, 339 P. (2d) 684 (1959). In that case, it was contended that the 1957 amendment to the workmen's compensation act, RCW 51.24.010, operated retrospectively. This amendment removed the immunity proviso afforded to an employer or employee under the act from liability for injuries resulting from their tortious conduct, sustained by third-party employees also under the act in other employment. The majority of this court there held that the imposing of liability where, prior to the amendment, no liability existed, would be an impairment of a vested right; that statutes affecting vested rights will be construed as operating prospectively only. We see no distinction in the application of the above rule to the facts of the *Hammack* case, and in its application to the facts of the instant case.

The rule announced in the *Hammack* case is controlling. The trial court was therefore correct in refusing to give appellant's proposed instruction No. 8.

Appellant assigns error to the court's instructions Nos. 13 and 14. From our examination thereof, we are satisfied they correctly state the law, and we do not find overemphasis of "motivation" in these instructions considered with instruction No. 12, as contended by the appellant.

Finding no error in the record, the judgment of the trial court is affirmed.

ALL CONCUR.

January 7, 1960. Petition for rehearing denied.