[No. 34958. Department Two. January 28, 1960.]

INESE VIKELIS, *a Minor, by Erna Vikelis, her Guardian ad Litem, Appellant,* v. TALIS JAUNDALDERIS *et al., Respondents.*

PETER GRUNTE, *Appellant,* v. TALIS JAUNDALDERIS *et al., Respondents.*[1]

[1]Reported in 348 P. (2d) 649.

*Weyer, Roderick, Schroeter & Sterne* and *Michael J. Cafferty,* for appellants.

*Kahin, Carmody & Horswill,* for respondents.

HUNTER, J.—This is an appeal from an order dismissing plaintiffs' complaints, at the conclusion of the plaintiffs' case in a jury trial. At the trial two separate actions arising out of the same automobile accident were consolidated for all purposes. In one cause, the plaintiff was Peter Grunte, who brought an action for the wrongful death of his daughter Judite. In the other, the plaintiff was Erna Vikelis, as guardian *ad litem,* for her minor daughter, Inese. Defendants in both actions were Talis Jaundalderis, a minor, and his parents, Janis and Auguste Jaundalderis.

Both plaintiffs submitted amended complaints stating three separate causes of action, upon independent theories: (1) that Talis Jaundalderis was operating the family car as agent for his parents, and that his negligent operation thereof was the proximate cause of the resulting death and injuries; (2) that Talis Jaundalderis was guilty of gross negligence which proximately caused the death and injuries; (3) that Janis and Auguste Jaundalderis were negligent in entrusting their son Talis with the family car when they knew or should have known that he "was a young, incompetent, inexperienced, reckless, and negligent driver," in whose hands a motor vehicle was a dangerous instrumentality and that the negligent entrustment by the parents was the proximate cause of the death and injuries.

The parties involved are three Latvian families who came to this country as displaced persons. The Vikelis and Jaundalderis families were neighbors in Seattle from 1952 to

1955, and during this period Eduard Vikelis and Janis Jaundalderis worked for the same employer. In 1953, the Jaundalderis family purchased the automobile which was involved in the collision in question. The Vikelis family did not own an automobile and no member of the family could drive, but both Janis and his son Talis drove the family car. As a result of these circumstances, the Vikelises, for a period of almost three years, were transported in the Jaundalderis automobile, for weekly shopping trips, family outings, Latvian gatherings, and other transportation sharing. As a result of this relationship, Mr. Vikelis periodically bought gas for the automobile and, on at least two occasions, paid for having the car lubricated.

Mr. Vikelis testified that he bought three or four dollars' worth of gasoline whenever, by his calculations, his family had been transported by Janis or Talis Jaundalderis for a distance of approximately fifty miles; that his calculations included trips by any member of his family including his daughter and, sometimes, her friends. He further testified that, approximately two weeks before the accident, he had filled the gas tank and in the interim had only taken one trip to the market, a distance of approximately five miles.

On the morning of August 28, 1955, the day of the accident, Talis obtained the car with his father's permission; Talis' intention being to attend the Latvian picnic at Lutherland, in the company of Inese Vikelis. Permission was given reluctantly. According to the testimony of one Fronchevich, the father initially refused, telling Talis "That is too far and the highways are very crowded and you know that you are a fast and sharp driver, . . . and I am afraid you will wreck the car and something will happen so I don't want you to go." However, upon the mother's intercession, and her assurance that Talis had promised to drive carefully, the father agreed.

At the picnic, Inese saw Judite Grunte, and it was decided she would return with Talis and Inese in the Jaundalderis car to spend the night as a house guest of the Vikelis family.

While returning from the picnic, Talis failed to stop at

an arterial intersection and the collision occurred. Judite was killed, and Inese was seriously injured. The above actions were subsequently instituted. It was admitted that Talis was guilty of negligence.

Defendants pleaded RCW 46.08.080, the host-guest statute, as an affirmative defense to all of plaintiffs' causes of action. It was the opinion of the trial court that the statute applied and an order was entered dismissing their complaints. The trial court further denied the plaintiffs' motion for a new trial. This appeal followed.

■ Appellants contend payment was made to the Jaundalderises for transportation of Inese and her friend, Judite, under the above facts. We recently restated the two elements that must be established to prove payment, within the contemplation of the host-guest statute, in the case of *Nogosek v. Truedner*, 54 Wn. (2d) 906, 344 P. (2d) 1028 (1959), quoting from *Fuller v. Tucker*, 4 Wn. (2d) 426, 103 P. (2d) 1086 (1940):

" ' . . . *(1) An actual or potential benefit in a material or business sense resulting or to result to the owner, and (2) that the transportation be motivated by the expectation of such benefit.*' (Italics ours.) "

■ Giving appellants the benefit of the most favorable inferences, is the evidence sufficient to establish these elements essential to proof of payment for the transportation of Inese and Judite on the day of the accident? We think not. Whatever the understanding of the Vikelises and Jaundalderises, in regard to payment for furnishing transportation generally may have been, this is of no assistance in determining the present issue, unless it was their intention that it include such transportation as was provided on the day in question. Unless the evidence discloses it was the desire of the Vikelises that their daughter attend the Latvian picnic, there would be no necessity for the transportation being furnished. Unless the Jaundalderises understood that the Vikelises wished their daughter to attend the picnic, there would be no obligation or motivation on their part to furnish such transportation irrespective of any obligation to furnish transportation generally. There is an

absence of any testimony in the record to support a finding of such an intention or understanding. The evidence, on the contrary, discloses that obtaining the car to attend the picnic was purely an idea of Talis and Inese. No request was made by the Vikelises that transportation be furnished for Inese, nor did the Jaundalderises have knowledge that her parents desired transportation for her to the picnic.

We are satisfied the record is insufficient to support a jury finding (1) that the Vikelis family contemplated that payment had been made for Inese's transportation on the particular occasion or, (2) that the Jaundalderises, in permitting Talis to take the car, were motivated by reason of any previous payment for the transportation of Inese, or her friend Judite, on the day in question.

Appellants further contend the 1957 amendment to RCW 46.08.080, the host-guest statute, should operate retrospectively, thus entitling appellants to recover on the theory of the gross negligence of the host driver; that the original act, in force at the time of the accident, which barred such an action no longer applies. We considered the same contention in *Nogosek v. Truedner, supra,* holding the 1957 host-guest statute did not operate retrospectively. The *Nogosek* case is controlling here.

The appellants contend the Jaundalderises negligently entrusted the automobile to their son Talis since they knew or should have known he was "a young, incompetent, inexperienced, reckless, and negligent driver." This contention is supported primarily by the statement of the father prior to his reluctantly granting permission for Talis to use the car, on the day in question, which we again quote:

"That is too far and the highways are very crowded and you know that you are a fast and sharp driver, . . . and I am afraid you will wreck the car and something will happen so I don't want you to go."

The record also discloses that Talis had previously received some traffic citations and, on one occasion, his driver's license had been suspended for thirty days, but had been reinstated prior to August 28, 1955.

In considering this contention, in view of the fact that Talis had a valid and subsisting driver's license, at the time, we must presume as a matter of law, that he was competent and qualified to operate his parents' car. The expression of apprehension by the father, standing alone, does not constitute affirmative evidence of incompetency or recklessness. Thus, there is insufficient evidence in the record to overcome the presumption.

We therefore conclude the appellants have failed to establish the allegation of negligent entrustment by any substantial evidence in the record. We do not reach the issue of the application of the host-guest statute as a defense to an action based upon the theory of negligent entrustment.

Finding insufficient evidence in the record to raise a jury question on appellants' first and third causes of action and, as to the second cause of action, that the 1957 host-guest statute does not operate retrospectively, we conclude the trial court was correct in dismissing appellants' complaints. We further find no error in the record to support appellants' motion for a new trial.

The order of the trial court dismissing appellants' complaints and denying the motion for a new trial is affirmed.

MALLERY, FINLEY, ROSELLINI, and FOSTER, JJ., concur.