[No. 14764. Department Two. February 7, 1919.]

THE STATE OF WASHINGTON, *Respondent*, v.
FRANK MILLER, *Appellant*.[1]

CRIMINAL LAW (250)—CREDIBILITY OF WITNESS—QUESTION FOR
JURY. The credibility of the witnesses is for the jury.

WITNESSES (55)—COMPETENCY—INFORMATION ACQUIRED BY PHYSI-
CIAN—CRIMINAL ACTIONS. A physician cannot testify in a criminal
case as to information acquired in treating the accused, without
his consent, under Rem. Code, § 1214, so providing as to civil
actions, and Id., § 2152, providing that the rules of evidence in civil
actions shall be, so far as practicable, applied in criminal prosecu-
tions; notwithstanding Id., § 2147, providing that physicians shall
be protected from testifying in criminal prosecutions, which merely
protects the rights of the physician.

SAME (56)—WAIVER OF PRIVILEGE. The consent of the accused to
testimony by a physician as to the nature of a disease for which
he was treated is not shown by the testimony of other witnesses
that accused had admitted having been afflicted with such disease;
but the waiver must be made by the accused at the trial.

SAME (55)—COMPETENCY—INFORMATION ACQUIRED BY PHYSICIAN.
Where a physician treated accused for a certain disease, it must be
assumed that he acquired information of the disease at that time,
and that it was necessary to enable him to give treatment, within
Rem. Code, § 1214, disqualifying the physician from testifying as to
information acquired in attending his patient.

HOLCOMB, J., dissents.

Appeal from a judgment of the superior court for
Chelan county, Grimshaw, J., entered November 23,
1917, upon a trial and conviction of a gross misde-
meanor. Reversed.

*G. G. Hannan* and *Reeves & Reeves*, for appellant.
*Burt J. Williams* and *N. A. Pearson*, for respondent.

PARKER, J.—The defendant was charged with the
commission of a gross misdemeanor, in that he took
indecent liberties with the person of a girl under the

[1]Reported in 178 Pac. 459.

age of eighteen years, in violation of Rem. Code, § 2442. Trial in the superior court, sitting with a jury, resulted in a verdict of guilty, upon which judgment was rendered, fining the defendant and sentencing him to imprisonment in the county jail, from which he has appealed to this court.

It is contended by counsel for appellant that the evidence was not sufficient to sustain the verdict and judgment, and that the trial court should have so decided as a matter of law, in accordance with motions timely made in that behalf. A careful review of the evidence convinces us that this contention has to do, in its last analysis, only with the credibility of witnesses, whose stories, if believed by the jury, were sufficient to support the conviction. It therefore seems quite plain to us that the trial court did not err in refusing to sustain the challenge to the evidence made by counsel for appellant.

It is next contended in appellant's behalf that the trial court erred to his prejudice in permitting a physician to testify, over the objection of his counsel, that appellant had the disease known as gonorrhoea, prior to and near the time of the alleged commission of the offense, the physician having acquired information of that fact in attending appellant as his patient and treating him for that disease. This testimony was introduced by the prosecution as tending to show that appellant had communicated that disease to the girl, there being other testimony tending to show that she had become afflicted with it about the time of the alleged commission of the offense. The physician was asked and answered, over the objection of counsel for appellant, as follows:

"Q. I will ask you doctor if you treated Frank Miller at that time? A. Yes, Miller came to me, and

I treated him for gonorrhoea. I gave him two pre-
scriptions. That is all I saw of him until he came in
and paid me. Q. That was on the 21st day of June,
1917? A. Yes, sir.''

The offense was committed, if at all, on about June
25, 1917. The objection to the receiving of this evi-
dence was, in the trial court, and is here, rested by
counsel for appellant upon the following provisions of
our civil and criminal practice statutes:

''A regular physician or surgeon shall not, without
the consent of his patient, be examined in a civil ac-
tion as to any information acquired in attending such
patient, which was necessary to enable him to pre-
scribe or act for the patient.'' Rem. Code, § 1214.

''The rules of evidence in civil actions, so far as
practicable, shall be applied to criminal prosecutions.''
Rem. Code, § 2152.

Counsel for the prosecution rely upon the following
provisions of the criminal practice statute:

''Witnesses competent to testify in civil cases shall
be competent in criminal prosecutions, but regular
physicians or surgeons, clergymen or priests, shall be
protected from testifying as to confessions, or infor-
mation received from any defendant, by virtue of their
profession and character. · . . .'' Rem. Code, § 2147.

It seems clear to us that the above quoted portion of
Rem. Code, § 1214, prescribes a rule of evidence in
civil cases which is made applicable to criminal prose-
cutions by Rem. Code, § 2152; unless, as argued by
counsel for the prosecution, § 2147 evidences a legis-
lative intent to the contrary. The argument seems to
be that, since § 2147 of our criminal practice statute
is an express provision protecting the physician from
testifying as to the information received by virtue of
his profession from his patient and makes no pro-

vision for the protection of the patient as to his physician testifying as to information so received, there is thereby evidenced a legislative intent to not make the rule of evidence prescribed by the above quoted portion of § 1214 applicable to criminal prosecutions. We cannot agree with this contention. It seems to us that §§ 1214 and 2147, Rem. Code, are intended to protect two different classes of persons, and are in nowise in conflict with each other. The former protects a patient from having his physician disclose upon the witness stand any information acquired in attending him as such patient which was necessary to enable the physician to prescribe for him; while the latter has reference to the protection of the physician only. That is, in so far as the patient's rights are concerned, he has the right of election under §§ 1214 and 2152 in both civil and criminal cases; and in so far as the physician's rights are concerned, he has the right of election under § 2147 in criminal cases. It seems to us highly improbable that the legislature would accord to a patient a higher degree of protection in civil actions than in criminal actions, that is, a higher degree of protection to his right of property than to his right of liberty. The policy of such statutes, of which there are many in other states similar to ours, manifestly is for the benefit of the patient, to the end that he may with safety freely disclose his ailments to a physician to the end that they be properly treated. We are of the opinion that the trial court fell into error in allowing the physician to testify as he did, over the objection of counsel for appellant.

Some contention is made by counsel for the prosecution that the privilege of appellant to prevent his physician from testifying was waived by appellant's voluntary disclosures to others that he was afflicted with

the disease of gonorrhoea, near the time of the alleged
commission of the offense.   These alleged disclosures
rested entirely upon the testimony of other witnesses,
and not upon anything that appellant or his counsel
said or did at the time of the trial.   Even the testi-
mony of these witnesses tends to show that appellant,
in making his admissions to them, denied having the
disease at the time of the alleged commission of the
offense.   However that may be, we think a patient's
consent to his physician's testifying cannot be shown
solely by the testimony of witnesses concerning the
patient's previous admissions or disclosures.   No de-
cision has come to our attention holding that such is
the law.   It seems to us that the consent must be evi-
denced to the trial court by some word or act of the
patient at the time of the trial, so that the trial court
can conclusively know, without depending upon the
veracity of third persons as witnesses, that the pa-
tient has waived the privilege accorded to him by the
statute.   We conclude, therefore, that the record does
not properly show that appellant waived the privilege
of having his physician refrain from testifying.

It is further argued that there is nothing in the phy-
sician's testimony which discloses any communication
made by appellant to the physician, or information
acquired by the physician, when he prescribed for
appellant and treated him for the disease.   It is true
that there is nothing in the testimony of the physician
indicating what conversation took place between him
and appellant as his patient; but manifestly there is
enough in his testimony to call for the conclusion that
he acquired the information as to appellant being af-
flicted with the disease when appellant went to him
for treatment.   In *Edington v. Mutual Life Ins. Co.*,
67 N. Y. 185, 194, Judge Miller, speaking for the court,

made the following pertinent observations touching a similar contention:

"The point made that there was no evidence that the information asked for was essential to enable the physician to prescribe is not well taken, as it must be assumed from the relationship existing that the information would not have been imparted except for the purpose of aiding the physician in prescribing for the patient. Aside, however, from this, the statute in question, being remedial, should receive a liberal interpretation, and not be restricted by any technical rule. When it speaks of information it means not only communications received from the lips of the patient but such knowledge as may be acquired from the patient himself, from the statement of others who may surround him at the time, or from observations of his appearance and symptoms. Even if the patient could not speak, or his mental powers were so affected that he could not accurately state the nature of his disease, the astute medical observer would readily comprehend his condition. Information thus acquired is clearly within the scope and meaning of the statute."

We are of the opinion that this record calls for the conclusion that the physician acquired the information as to which he testified when he treated appellant; that such information was necessary to enable him to treat appellant; and that the court erred to appellant's prejudice in permitting the physician to testify over the objection of his counsel.

Some contention is made by appellant's counsel that the court erred in giving and refusing to give certain instructions. We think there was no prejudicial error in this regard.

The judgment is reversed because of the error of the trial court in admitting the physician's testimony over the objection of counsel for appellant, and he is granted a new trial.

MOUNT, FULLERTON, and MAIN, JJ., concur.

HOLCOMB, J. (dissenting)—The matter of privilege as to the testimony of a witness, whether on the part of the witness or of the party, is a matter of policy, generally declared by the legislature. At common law, privilege as to communication between physician and patient could not be invoked, while religious confessional privilege was recognized. By virtue of § 1214, subds. 3 and 4, *supra*, priests and clergymen and physicians are *disqualified* as witnesses as to communications made by confessors religiously and patients "necessarily" to their physician, upon the invocation of the privilege by confessor or patient in civil actions. This results in a disqualification of the witness by such invocation of privilege on the part of the interested party. The criminal statute recognizes the right of protection on the part of the same classes of witnesses, but does not in terms grant to the confessor or patient the right to object to the testimony or invoke the privilege. Consequently, unless the statute, § 2152, *supra*, prescribing that the rules of evidence in civil actions so far as practicable shall be applied to criminal prosecutions controls herein, such privilege cannot be invoked by the patient.

Statutory privilege as to testimony is not strictly a rule of evidence, but rather a rule of procedure and a grant of immunity. The great end and aim of judicial investigation is to elicit the exact and entire truth as to the matter under inquiry, so far as human limitations allow, and to declare the truth and embody it in a judicial determination. To that end it is sometimes the wise policy of the law, notwithstanding Professor Wigmore's strictures thereon in his valuable work (Vol. 4, § 2380), to forbid or repress testimony that might be competent and relevant if offered by

16—105 WASH.

competent witnesses under general rules relating thereto. For example, when the mouth of one party to a transaction is closed by death, it is the wise policy of the law to forbid the other party to that transaction to open his mouth in any adverse proceeding involving the transaction, since, inasmuch as the mouth of the one is closed, the testimony of the other might not be capable of contradiction, and the temptation to frail human nature to falsify, alter, or fabricate material facts is too great to permit the belief that the real truth might, in such cases, be discovered. Therefore, in such cases, it is wisdom to repress such uncontradictable testimony rather than to elicit it. Again, in regard to confidences between husband and wife, attorney and client, priest or clergyman and religious confessor, and physician and patient, the spirit of the law encourages the fullest and freest confidential disclosures, and in civil cases allows the party so disclosing his inner conscience to his trusted adviser, so recognized by law, to object and thereby prevent any public judicial disclosure thereof.

But to reiterate, these safeguards to private parties in civil litigation are not rules of evidence generally, but only special rules of procedure provided for the benefit of the parties. When another statute requires the rules of evidence, so far as applicable in civil proceedings, to apply to criminal proceedings, it has reference to the general principles and rules applying to evidence as such or the competency of witnesses generally, and not to statutory privileges or immunities.

A further consideration that has some weight is that, in criminal proceedings, when the object to be sought and, if possible, attained is to ascertain the truth or falsity of an accusation of offense against the laws and the peace and dignity of the state and

determine the guilt or innocence of the party charged, the state, as a whole, is the party interested adversely, and in the broad interests of such purpose the state has the right to say what immunities and privileges shall be granted as against it.

Sections 1214, 2147 and 2152, Rem. Code, were originally passed by the territorial legislature in 1854, and were embodied in the Code of 1881. The Code of 1881 was a separate and independent enactment, and where any conflict arises between that code and prior statutes the last enactment must be held to be the law. In the Acts of 1854, the word "not" occurred before the word "protected" in the section now codified as § 2147, Rem. Code, but was somehow omitted in the Code of 1881. Section 2147, *supra,* gives the physician the right to claim the privilege, irrespective of whether the defendant claims it under §§ 1214 and 2152, *supra.* In the present case, the physician expressly waived the privilege and expressed his willingness to testify.

The defendant's objection to the physician's testimony relating to the treatment of appellant should have been sustained, if the same privilege is accorded to the patient of a physician in a criminal proceeding as in a civil case.

Since it apparently deliberately legislated upon the subject, prescribing the privilege of certain classes of witnesses as to necessary or confidential communications to them, it would appear that the legislature of 1881 intentionally declared the policy of the law as to proceedings brought by the state, by omitting the word "not" in the former statute and preserving the privilege only to the witness *to whom,* and not the party *by whom,* such facts had been communicated.

The statute relating to civil actions prohibits the testimony unless the patient consents, while the stat-

ute relating to criminal proceedings avoids prohibiting the testimony but protects the privileged witness upon his claim only.

There was therefore no error in permitting the physician, who waived the physician's privilege, to testify in a criminal case.

I therefore dissent.