[No. 32327. Department Two. February 20, 1953.]

MERLE McUNE, *Appellant*, v. AL FUQUA, *Respondent*.[1]

[1]Reported in 253 P. (2d) 632.

*Elery A. Van Diest, Tonkoff & Holst,* and *Blaine Hopp, Jr.,* for appellant.

*Kenneth C. Hawkins* and *Milton P. Sackmann,* for respondent.

HAMLEY, J.—Merle McUne brought this action against Al Fuqua to recover damages sustained in an automobile accident while plaintiff was riding as a passenger in defendant's car.

The case was tried to a jury, which returned a verdict for plaintiff in the sum of $21,400. The trial court thereafter granted defendant's motion for judgment n. o. v. The court also granted defendant's alternative motion for a new trial, effective only if the order granting judgment n. o. v. should be reversed. Judgment was entered accordingly, and plaintiff appeals.

Appellant's first assignments of error relate to the granting of judgment n. o. v., and call for a consideration of the host-guest statute (RCW 46.08.080 [Rem. Rev. Stat., Vol. 7A, § 6360-121]). This statute reads as follows:

"No person transported by the owner or operator of a motor vehicle as an invited guest or licensee, without payment for such transportation, shall have cause of action for damages against such owner or operator for injuries, death, or loss, in case of accident, unless the accident was intentional on the part of the owner or operator: *Provided,* That this section shall not relieve any owner or operator of a motor vehicle from liability while it is being demonstrated to a prospective purchaser."

Specifically, the question presented is whether the trial court erred in holding, as a matter of law, that there had not been payment for the transportation. Appellant argues that, under the evidence, this question was properly left to the jury, and that the court erred in rejecting the jury's finding and deciding the question to the contrary as a matter of law.

The testimony shows that McUne was a rancher in the Selah district near Yakima, Washington. Fuqua was a building inspector employed by the city of Yakima. The two had been friends for many years, and were active together in bowling tournaments and as members of the drill team of the Yakima aerie of the Eagles lodge.

It had been the custom of the Yakima aerie to send this drill team to the state conventions of the Eagles lodge wherever they might be held. On such occasions, the aerie paid the members of the drill team a *per diem* while away from Yakima and five cents a mile as travel expense. The 1951 convention of this lodge was held in Hoquiam, Washington. For the purpose of attending this convention, the members of the drill team planned to form a caravan of about ten cars at a designated point on the outskirts of Yakima, and from there proceed to Hoquiam.

On the evening prior to this trip, McUne and Fuqua agreed that Fuqua would take his car on this trip, and that McUne would ride with Fuqua, at least on the trip over. McUne desired the ride, as his wife wanted his car. He told Fuqua, however, that Mrs. McUne might come over to Hoquiam and bring him back to Yakima when the convention was over. Both parties testified that they agreed at this time that McUne would buy the gasoline for half the round trip.

In accordance with these arrangements, Fuqua called for McUne at the latter's home early the next morning. They joined the caravan as planned. The accident occurred after they had traveled a few miles on the Chinook Pass highway. The collision disabled Fuqua's car, but both men continued on to Hoquiam in other automobiles. Fuqua returned to Yakima in McUne's car, which Mrs. McUne had driven to Hoquiam.

McUne did not actually pay for any gasoline used in Fuqua's car on this trip. The evidence indicated it to be the custom, on such trips, for the passenger to pay for the gasoline at the time when it was purchased along the route. Fuqua started out with a full tank of gasoline that morning, and had not made any stops for service prior to the accident.

There was testimony to the effect that, on two or more previous bowling and drill team trips together within the year or so prior to the accident, McUne and Fuqua had alternated in providing the car, the passenger in each case paying for the gasoline. There was also evidence tending to show that this was the custom generally followed by mem-

bers of the drill team. On this particular trip, members of the drill team each received $52.50 from the Yakima aerie, this sum representing the *per diem* and mileage travel expense allowance.

On this evidence and other evidence of similar import, the trial court concluded that the purpose of the trip in question was social, and was not of a business nature or to secure an advantage in a material or business sense. This being so, the court held that the promise to pay for gasoline used on the trip did not constitute "payment" as that term is used in the statute. Since this left appellant in the position of an invited guest or licensee "without payment," the trial court was necessarily led to conclude that appellant's action was barred by the statute.

The requirements necessary to constitute payment for transportation such as to avoid the bar of our statute were specifically delineated in *Fuller v. Tucker*, 4 Wn. (2d) 426, 103 P. (2d) 1086. The two requirements, as there stated, are as follows: (1) an actual or potential benefit in a material or business sense resulting or to result to the owner; and (2) that the transportation be motivated by the expectation of such benefit. This first requirement was amplified in *Scholz v. Leuer*, 7 Wn. (2d) 76, 109 P. (2d) 294 (quoted with approval in *Hayes v. Brower*, 39 Wn. (2d) 372, 235 P. (2d) 482), where we said:

"If there is payment for the transportation, the statute does not apply, and this does not mean that payment must necessarily be made in money. It is sufficient if the presence of the occupant directly compensates the operator or owner in a substantial and material or business sense, as distinguished from mere social benefit or nominal or incidental contribution to expenses." (p. 84)

In cases where the trip was for social purposes only, and there was no showing that the passenger had contributed to the expenses of the trip, our court has held, under the facts shown, that the presence of the passenger did not constitute an actual or potential benefit to the driver in a material or business sense. *Syverson v. Berg*, 194 Wash. 86, 77 P. (2d) 382; *Fuller v. Tucker, supra.* But where it has

been shown that the passenger contributed, or promised to contribute, to the actual expenses of the trip, then, notwithstanding the fact that the trip was solely for social purposes, we have held that it is for the trier of the facts to find whether such contribution constitutes an actual or potential benefit in a material or business sense. See *Potter v. Juarez,* 189 Wash. 476, 66 P. (2d) 290; *Pence v. Berry,* 13 Wn. (2d) 564, 125 P. (2d) 645.

In the instant case, the payment for the gasoline on half the journey would relieve the driver of a substantial expense which he would otherwise have incurred. The jury, in our opinion, was therefore entitled to find, as it did find, that the agreement to pay for the gasoline was an actual or potential benefit to the driver in a material or business sense, notwithstanding the fact that the trip was for a social purpose.

Respondent further contends, however, that there was no basis in the evidence for a finding that the transportation was motivated by the expectation of such benefit. This has reference to the second requirement necessary to establish "payment for transportation," as set out in *Fuller v. Tucker, supra.*

This requirement does not mean that the *taking of the trip* must be motivated by the expectation of receiving the benefit. It need only be shown that the *furnishing of transportation to the passenger* was motivated by such expectation. Nor does it mean that the expectation of receiving the benefit must be the sole motivating factor in furnishing transportation to the passenger. It is sufficient, we believe, if such expectation is shown to be a substantial factor. See *Hayes v. Brower,* 39 Wn. (2d) 372, 385, 235 P. (2d) 482. See, also, the analysis of the host-guest statute and review of past decisions of this court by Professor Richards, in 24 Wash. L. Rev. 101, 103.

In contending that motivation was not shown, but was, in fact, expressly negatived, respondent relies upon his testimony on recross-examination, as follows:

"Q. Mr. Fuqua, when you made your arrangement with Mr. McUne to take him on this particular trip, was the fact

that he stated to you that he would buy the gas, is that fact the thing that caused you to furnish him with transportation? A. Not necessarily. Q. Well, just answer the question: Was it or was it not? A. No, I don't think so. Q. It wasn't? It wasn't? A. No."

The jury, of course, was not bound by this testimony. Were the rule otherwise, the defendant in such a suit would always have it in his power to defeat the action by disclaiming motivation. The credibility of witnesses and the weight to be given to their testimony is for the jury. *Kelly v. Drumheller,* 150 Wash. 185, 272 Pac. 731. Where, as here, the testimony comes from respondent himself, the jury has the right to discount his disavowal of motivation, and, if there is evidence to the contrary, find that the expectation of receiving a benefit was a substantial motivating factor.

■ Considering all of the evidence relative to this transaction, as reviewed above, we believe that there was substantial evidence in support of the jury's finding as to motivation. Respondent himself, after denying such motivation as above noted, later testified on redirect examination as follows:

"Q. Well, you said a while ago that it wasn't necessary that he buy the gas, that you were taking him over, but that was one of the factors of your taking him over that he would buy the gas and using your car, is that right? A. Yes."

■ As to both of the stated requirements which must be met in order to show "payment for transportation" within the meaning of the statute, the question is for the jury unless reasonable minds can reach but one conclusion. *Parrish v. Ash,* 32 Wn. (2d) 637, 203 P. (2d) 330. We are of the opinion that, as to each such requirement there was here substantial evidence to support the jury's findings. The trial court therefore erred in granting the motion for judgment n. o. v.

The remaining assignments of error bring into question the action of the trial court in granting the alternative motion for a new trial. This motion was granted on the ground of newly discovered evidence. See Superior Court Rule 16 (4), 34A Wn. (2d) 117.

The purpose of the proffered new evidence was to show that some or all of the physical disabilities for which appellant sought damages were sustained by him prior to the accident. The new evidence would consist of the testimony of a doctor who, in his professional capacity, examined and treated appellant, and the testimony of the doctor's former nurse.

The doctor would testify that from June, 1946, to February, 1950 (the accident occurred in June, 1951), he treated appellant a total of twenty times for various ailments. He would further testify regarding the particular ailments for which appellant received treatment. These included lumbago in 1946, contusions of the right shoulder in 1947, rheumatic conditions in both the right and left shoulders in 1947, neuritis of the right shoulder and arm in 1947, pains in the right little finger in 1950, and other miscellaneous ailments. The doctor would also identify and explain an X ray taken of appellant's right shoulder in connection with the above medical examinations and treatment. The nurse would identify and explain office records relative to these examinations and treatments.

Asserting that he does not consent to the giving of such testimony and that it would therefore be inadmissible at a new trial, appellant argues that the trial court erred in granting a new trial on the ground of newly discovered evidence. Appellant thus invokes RCW 5.60.060 (4) (Rem. Rev. Stat., § 1214 (4)), which reads as follows:

"(4) A regular physician or surgeon shall not, without the consent of his patient, be examined in a civil action as to any information acquired in attending such patient, which was necessary to enable him to prescribe or act for the patient."

■ That part of the doctor's proposed testimony wherein he would describe and discuss appellant's ailments is clearly based upon information acquired in attending his patient, which information was necessary to enable him to prescribe or act for the patient. Therefore, unless appellant has consented to such testimony, it would, under the above statute, be inadmissible. *Brammer v. Lappenbusch*, 176 Wash. 625,

30 P. (2d) 947. This is also true regarding the proposed testimony describing the X ray. *Hansen v. Sandvik,* 128 Wash. 60, 222 Pac. 205.

A new trial should not be granted on the ground of newly discovered evidence where the proposed evidence would be inadmissible. *Tonning v. Northern Pac. R. Co.,* 180 Wash. 374, 39 P. (2d) 1002; *Stone v. Sigel,* 189 Minn. 47, 248 N. W. 285.

Respondent contends, however, that when appellant, during the course of the trial, presented his own testimony and that of three doctors relative to appellant's physical ailments and disabilities, he impliedly consented to the giving of testimony of the kind now proposed, or impliedly waived the privilege accorded by the statute.

The privilege is for the benefit of the patient, to the end that he will be encouraged to disclose his ailments to a physician so that they may be properly treated. *State v. Miller,* 105 Wash. 475, 178 Pac. 459. This being so, the patient for whose benefit the privilege exists may consent to the disclosure of the information communicated to his physician, and the statute so provides. This consent may be given expressly or may be implied from conduct amounting to a waiver of the privilege. *Williams v. Spokane Falls & N. R. Co.,* 42 Wash. 597, 84 Pac. 1129; *In re Quick's Estate,* 161 Wash. 537, 297 Pac. 198.

When a patient permits his physician to testify without objection, he of course waives the privilege as to that physician. *Williams v. Spokane Falls & N. R. Co., supra.* By so doing, he or his personal representative also waives the privilege as to other physicians who attended the patient at the same time and in consultation with the first physician. See the cases cited in 62 A. L. R. 680, 684, annotation.

Whether, by so doing, he or his personal representative also waives the privilege as to physicians who testify as to the same ailment or disability, but who gained their information as a result of independent examination or treatment of the patient, is a question on which the courts of other jurisdictions are divided. The majority rule appears to be that

there is no waiver under such circumstances. A sizeable minority, however, follow the contrary rule that a waiver has occurred. See cases cited in 62 A. L. R. 680, 681, annotation; 90 A. L. R. 646, annotation.

In the case of *In re Quick's Estate, supra,* it was held that the act of the patient's personal representative in calling a physician who attended decedent during his last illness, to testify as to the mental condition of his patient, operated to waive the privilege as to similar testimony from another physician who attended the patient during the last illness. It does not appear whether or not the two physicians attended the patient independently of each other, or together and in consultation. Hence we do not know whether *In re Quick's Estate* involved a situation calling for application of either the majority or the minority rule referred to above.

In the instant case, we do know that the physician whom respondent would now like to call to the witness stand did not gain his information at the same time and in association with the physicians whom appellant called. Assuming that his testimony would relate to the same ailment or disability (a question later to be considered), we are here required to determine whether, under such circumstances, appellant's act in presenting his medical testimony operated to waive the privilege as to respondent's proposed medical testimony.

In every personal injury case, one of the questions which the trier of the facts must necessarily decide is whether the plaintiff's disabilities for which he seeks recovery were sustained as a result of the accident or existed prior thereto. The plaintiff opens up that issue when he produces his medical testimony. By so doing, he, in effect, represents that the ailments and disabilities which his medical witnesses describe as a basis for recovery did not exist prior to the accident or other event which gave rise to the claimed liability.

In this case, the plaintiff (appellant) did not content himself with such an implied representation, but took the witness stand and testified that the injuries and disabilities described by his doctors resulted from the accident. He also testified that he was able to do heavy work before the acci-

dent but not afterwards, that his health was good prior to the accident, and that he had not consulted a doctor "for years."

It seems to us that, under these circumstances, appellant must be deemed to have waived the privilege as to any medical testimony which tends to contradict or impeach medical testimony which he has himself offered. This same view was expressed in *Roeser v. Pease*, 37 Okl. 222, 131 Pac. 534, where the court said:

"If she [plaintiff] can go upon the witness stand and testify that she had not suffered from these afflictions prior to the accident, and then prevent the only available impeaching testimony from being disclosed, by a claim of privilege, it would seem that a mockery is being made of justice, and we do not think our statute contemplates such a condition." (p. 228)

To the same effect, see *State v. Long*, 257 Mo. 199, 165 S. W. 748; *Metropolitan Life Ins. Co. v. Kaufman*, 104 Colo. 13, 87 P. (2d) 758; *Steinberg v. New York Life Ins. Co.*, 263 N. Y. 45, 188 N. E. 152, 90 A. L. R. 642; 8 Wigmore on Evidence (3d ed.) 833-5, § 2389, 839, § 2390.

The question remains whether the proposed new medical testimony does relate to the same ailments and disabilities concerning which appellant's doctors testified. This, of course, is a question which must ultimately be decided by the trier of the facts. In passing on the question of admissibility, our only function is to determine whether, assuming the truth of the proposed testimony, the jury could find that it relates to some or all of the ailments and disabilities concerning which appellant seeks recovery.

Each of the three doctors who testified for appellant stated, among other things, that appellant had suffered disability in his right arm, involving weakness, pain, numbness, and difficulty of movement. One of the doctors diagnosed this arm condition as "brachial neuritis," and testified that this is usually caused by trauma.

In our opinion the jury could find that this arm disability, or some part thereof, is related to the prior contusions and rheumatic conditions of the right shoulder and prior neuritis

of the right shoulder and arm, as proposed to be described in the new medical testimony which respondent offers. Accordingly, we conclude, for the purpose of determining the question of admissibility, that there is such relation between the old and new medical testimony that appellant's production of the former constituted a waiver of the privilege as to the latter.

Appellant further argues, however, that the new evidence would probably not change the result if a new trial is granted; that it is not material to the issue; that it is merely cumulative; and that by the exercise of diligence it could have been discovered before the trial. If appellant is correct as to any of these contentions, then a new trial should not have been granted. *Nelson v. Placanica*, 33 Wn. (2d) 523, 206 P. (2d) 296; *Paddock v. Todd*, 37 Wn. (2d) 711, 225 P. (2d) 876.

 We have no hesitancy in saying, on the basis of the above discussion, that the new evidence is material to the issue and is not merely cumulative.

 As to the other factors mentioned, our examination of the evidence and affidavits leads us to believe that we would not be warranted in holding contrary to the trial court's ruling. A motion for a new trial upon the ground of newly discovered evidence is addressed to the sound discretion of the trial court. We will not disturb that exercise of discretion except for manifest abuse. *Strong v. Sunset Copper Co.*, 9 Wn. (2d) 214, 114 P. (2d) 526, 135 A. L. R. 423. A much stronger showing of an abuse of discretion will ordinarily be required to set aside an order granting a new trial than one denying a new trial. *Bystrom v. Purkey*, 2 Wn. (2d) 67, 97 P. (2d) 158. We find no abuse of discretion in this case.

 Since, however, the newly discovered evidence relates only to the question of damages, we are of the view that the new trial granted on that ground should have been limited to the question of the injuries sustained and the amount of damages to be awarded. *Nelson v. Fairfield*, 40 Wn. (2d) 496, 244 P. (2d) 244.

 Respondent argues, however, that the trial court should also have granted a new trial on the ground of misconduct of the appellant, which ground was urged at the time the motion was argued. Had a new trial been granted on that ground, it would, of course, require a new trial as to the entire case. The trial court declined to grant a new trial on that ground, and respondent did not cross-appeal. Respondent is nevertheless entitled to raise the question on this appeal, since the trial court's ruling will be sustained if it is correct upon any ground. *State ex rel. P. U. D. No. 1 v. Schwab*, 40 Wn. (2d) 814, 246 P. (2d) 1081.

Respondent's claim of misconduct on the part of appellant concerns a remark which appellant's counsel made during his argument to the jury. In his brief, respondent states that this remark was that the defendant had "thousands for defense, but not one cent for the plaintiff." The argument to the jury is not included in the statement of facts, and the only reference to it we can find in the record is in the trial court's memorandum opinion on the motions for judgment n. o. v. and for a new trial. The trial court does not quote the remark, but indicates that it was to the effect that the defendant has thousands for defense but nothing to pay for his obligation.

The trial court rejected this ground for a new trial for the reason that respondent's counsel did not object to the remark and ask to have the jury instructed to disregard it. The court noted that certain types of argument are so inflammatory and prejudicial that no instruction could remove their prejudicial effect. The court held, however, that the remark here in question was not of this kind and that, had an objection been made, an instruction could and would have been promptly given which, in the court's opinion, would have removed any possible prejudice which inhered in such argument.

 The trial court's statement of the law is correct. A new trial should not be granted because of misconduct of counsel unless there has been a request to the trial judge to give the jury a corrective instruction, except where the mis-

conduct was so flagrant that no instruction would cure it. *Canfield v. Seattle Cornice Works,* 122 Wash. 318, 210 Pac. 773; *Seth v. Department of Labor & Industries,* 21 Wn. (2d) 691, 152 P. (2d) 976.

Not having the argument of counsel before us, we are not in a position to say that the trial court incorrectly appraised the improper remark, or to set aside its ruling that any possible prejudice could have been cured by an instruction. We accordingly hold that the trial court did not err in denying the motion for a new trial on the ground of misconduct of counsel.

The judgment dismissing the complaint with prejudice is reversed. The case is remanded with directions to enter judgment fixing liability on respondent and for a new trial upon the issue of damages. Appellant will recover his costs on this appeal.

GRADY, C. J., SCHWELLENBACH, DONWORTH, and FINLEY, JJ., concur.

---

## ON REHEARING.

[*En Banc.* June 1, 1953.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the Departmental opinion heretofore filed herein.