[Nos. 39904, 39880.  En Banc.    September 17, 1968.]

A. W. PHIPPS, as *Administrator, et al., Petitioners,* v. NORVIN
SASSER *et al., Respondents.*

ANDREW JACKSON ASHURST *et al., Respondents,* v. DALE
WILLIAMS *et al., Petitioners.**

*Reported in 445 P.2d 624.

440

*Schroeter, Jackson, Talbot & Smith, Sanford Skidmore,* and *Chas. H. W. Talbot,* for petitioners Phipps et al.

*Thomas D. Loftus,* for petitioners Williams.

*Horton, Wilkins, Horton & Bennett,* by *Hugh B. Horton,* for respondents Sasser.

*Schroeter, Jackson, Talbot & Smith,* by *Paul D. Jackson,* for respondents Ashurst.

*J. Murray Kleist, J. Donald Curran, W. Ronald Groshong, Thomas P. Keefe, John R. Lewis, Hugh Miracle, Theodore D. Peterson, J. P. Tonkoff, Robert P. Piper, Roy Moceri,* and *Frank Eberharter,* amici curiae.

HILL, J.—Two superior court decisions are before us for review, each on a writ of certiorari. We deal with them in this single opinion because each raises the same question: Whether, and if so, when and to what extent a personal-injury plaintiff may be held to have waived his statutory physician-patient privilege[1] before actual trial, thereby en-

---

[1] The statute, RCW 5.60.060 (4), reads:

"The following persons shall not be examined as witnesses:

". . . .

"(4) A regular physician or surgeon shall not, without the consent of his patient, be examined in a civil action as to any information acquired in attending such patient, which was necessary to enable him to prescribe or act for the patient."

titling defendant to pretrial discovery as to medical experts otherwise covered by that privilege?

Anthony Appolito, one party-plaintiff in Phipps, Administrator, and Anthony Appolito v. Sasser (hereinafter referred to as the Appolito case), was injured in a collision between a motor scooter and an automobile in Benton County. He is a musician and, in following his rather peripatetic profession, was treated by some six different doctors in a total of four cities between the incident of the collision and the time, roughly a year later, when he settled in Seattle. There, plaintiff placed himself under the continuing care of two physicians suggested by Seattle counsel. Defense counsel, viewing their deposition of Mr. Appolito as something less than satisfactorily enlightening, noted the taking of depositions of his Seattle physicians on the grounds that information only thus procurable was essential to intelligent exercise of their undisputed right to a defense physical examination of the plaintiff, under our then RPPP 35.[2] Mr. Appolito moved to quash the subpoenas duces tecum, issued to the physicians, urging that the information sought was privileged. The Benton County Superior Court denied the motion, explicitly relying on the dissent in our recent decision of *Bond v. Independent Order of Foresters,* 69 Wn.2d 879, 421 P.2d 351 (1966). Mr. Appolito's request for review by certiorari was granted.

Andrew Jackson Ashurst, the injured plaintiff in Ashurst v. Williams (hereinafter referred to as the Ashurst case), alleged injuries caused by a fall at the home of defendants (one of whom is plaintiff's stepson) in King County. After commencement of the action to recover damages for injuries claimed to have resulted from the fall, Mr. Ashurst made timely answer to written interrogatories of the defendants; gave an oral deposition to defense counsel, with cross-examination by his own attorney; voluntarily sent defendants medical reports from three of his doctors, and voluntarily stipulated to defense capture of some 50 pages

---

[2]Rule of Pleading, Practice and Procedure 35, now CR 35, RCW vol. 0.

of relevant hospital records. Defense medical examination of Mr. Ashurst under our then RPPP 35,[3] was scheduled for, and was subsequently had, some 3 days after the trial court's ruling which is now before us for review. The defendants had moved for authorization to depose the plaintiff's physician on the grounds that plaintiff had waived his privilege by filing suit, or, in any event, by volunteering privileged information. It was urged, in opposition, that, as to the first ground, our recent case of *Bond v. Independent Order of Foresters, supra,* had settled Washington law to the contrary; and, as to the second, that the privileged information had been volunteered solely because of defense representations that an offer of compromise would result therefrom. The King County Superior Court denied the defense motions, relying on the majority opinion in *Bond, supra.*

We thus have for review a Benton County ruling to the effect that filing a personal-injury action constitutes a waiver of the physician-patient privilege; and a King County ruling that it does not constitute such a waiver (though other grounds for waiver are also urged in the King County case).

We have heretofore quoted the statutory privilege, and we now direct attention to CR 26,[4] under which the defendants were seeking to take the deposition of the physicians of the injured plaintiff in each case. It expressly limits the scope of examination to any matter, *not privileged,* which is relevant to subject matter involved in the pending action.

[3]See note 2, *supra.*

[4]Civil Rule 26, Depositions Pending Action (Part V, Depositions and Discovery):

    (a) When Depositions May Be Taken. Any party may take the testimony of any person, including a party, by deposition upon oral examination or written interrogatories for the purpose of discovery or for use as evidence in the action or for both purposes. . . .

    (b) Scope of Examination. Unless otherwise ordered by the court as provided by Rule 30(b) or (d), the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, . . . .

In the *Bond* case, *supra* (a 5-to-4 decision), we held that the bringing of a personal-injury action does not, by itself, constitute a waiver of the physician-patient privilege afforded by our statute.

We also held in that case that the plaintiff's testimony in a pretrial deposition, as to the nature and extent of his injuries, does not constitute a waiver of the physician-patient privilege where the testimony is in response to the defendant's pretrial subpoena since, under such circumstances, the plaintiff is being examined as an adverse witness in compliance with the subpoena and rules of court governing discovery.

In adhering to our decision in the *Bond* case, *supra,* we are not unmindful of the objects and purposes of liberal discovery rules such as ours. The benefits, as enumerated in Moore's Federal Practice, are:

1. It is of great assistance in ascertaining the truth and in checking and preventing perjury. . . .

. . . .

2. It is an effective means of detecting and exposing false, fraudulent, and sham claims and defenses.

3. It makes available in a simple, convenient, and often inexpensive way facts which otherwise could not have been proved, except with great difficulty and sometimes not at all.

4. It educates the parties in advance of trial as to the real value of their claims and defenses, thereby encouraging settlements out of court.

5. It expedites the disposal of litigation, saves the time of the courts, and clears the docket of many cases by settlements and dismissals which otherwise would have to be tried.

6. It safeguards against surprise at the trial, prevents delays and narrows and simplifies the issues to be tried, thereby expediting the trial.

7. It facilitates both the preparation and the trial of cases. 4 Moore's Fed. Prac., ¶ 26.02[2], at 1034 (2d ed).

While we are in full accord with the purposes of these rules and desire to make them effective instrumentalities for making available all the relevant facts in any case, we

444

must recognize that the discovery rules themselves, by explicit language, make their procedures unavailing and thereby their benefits unavailable with reference to privileged matters.

■ The rule of privilege embodied in RCW 5.60.060(4) reflects the considered judgment of one branch of our tripartite-structured government, traditionally regarded as constitutionally separate, independent and equal. Such legislative judgments merit, even require, the exercise of judicial self-restraint of a very high order.[5] It is our duty when confronted with a valid act such as this to give effect to the legislative intent embodied therein, refraining from substituting our judgment in the matter, whatever that may be, for that of the legislature.

■ It is to be noted that unlike the attorney-client and priest-penitent privilege, which have a common-law origin and are broad in their scope, the physician-patient privilege is of purely statutory origin; was not known at common law,[6] and is limited in its scope by the statutes which create it.[7] The origin of the privilege is generally attributed to the

[5]See generally concurring opinion by Finley, C. J., in *Markham Advertising Co. Inc. v. State*, 73 Wn.2d 405, 439 P.2d 248, and especially passage quoted from *Tyson & Brother—United Theatre Ticket Offices, Inc. v. Banton*, 273 U.S. 418, 446 (1927) (Holmes, J., dissenting).

Our 1946 case of *State ex rel. Haugland v. Smythe*, 25 Wn.2d 161, 168, 169 P.2d 706, 165 A.L.R. 1295—wherein we cited with approval from 8 Wigmore on Evidence § 2285, 531 (3d ed.), four fundamental conditions necessary for a relationally-based privilege against disclosure of communications—has no application here; the act there construed being, unlike the one here, an unclear embodiment of legislative intent.

[6]DeWitt, Privileged Communications between Physician and Patient 9 (1958).

· [7]Contrast our Washington statute which here limits the privilege "in a civil action" (but also extends it in different language to criminal actions; see RCW 10.58.010 and 10.52.020 and comment thereon in *State v. Boehme*, 71 Wn.2d 621, 634, *et seq.*, 430 P.2d 527 (1967)), and "to any information acquired in attending such patient, which was necessary to enable him to prescribe or act for the patient," with the Arizona statute (A.R.S., § 12-2235, at 620), which extends the privilege "to any communication made by his patient with reference to any physical or supposed physical disease or any knowledge obtained by

reaction to the common-law rule, announced by Lord Mansfield in the *Duchess of Kingston's Case,* All E.R. [1775-1802] 623, 168 Eng. Rep. 175 (1776),[3] and the lament of Mr. Justice Buller in *Wilson v. Rastall,* 100 Eng. Rep. 1283, 1287 (1792), that the law of privilege was not extended to "medical persons" as to "the information which they acquire by attending in their professional characters."

The legislature not only created the physician-patient privilege and limited its scope, as we have seen, but acted with equal clarity and certainty in designating the areas in which it shall not be operative—for an example see our workmen's compensation act which contains the following provision:

> In all hearings, actions or proceedings before the department or the board of industrial insurance appeals, or before any court on appeal from the board, any physician having theretofore examined or treated the claimant may be required to testify fully regarding such examination or treatment, and shall not be exempt from so testifying by reason of the relation of physician to patient. (RCW 51.04.050)

Since the legislature has created a physician-patient privilege, where none existed at common law, and has made its own limitations as to scope and as to where it shall not be applicable, any changes in it should be made by the legislature.

However, even constitutional privileges can be waived. *State v. Silvers,* 70 Wn.2d 430, 423 P.2d 539 (1967); *State v. Baxter,* 68 Wn.2d 416, 413 P.2d 638 (1966), and cases cited therein (pp. 423-24). And we are urged to hold that at some specific point in a personal-injury action there

personal examination of the patient." The Arizona statute contains its own waiver provision, *i.e.,* "A person who offers himself as a witness and voluntarily testifies with reference to the communications referred to in §§ 12-2234 and 12-2235 thereby consents to the examination of such attorney, physician or surgeon." (A.R.S., § 12-2236, at 621.)

[3] ". . . If a surgeon was voluntarily to reveal these secrets, to be sure he would be guilty of a breach of honour, and of great indiscretion; but, to give that information in a court of justice, which by the law of the land he is bound to do, will never be imputed to him as any indiscretion whatever." (at 625)

is a blanket waiver of his privilege by the plaintiff, and that the defendant may then take the deposition of the plaintiff's treating physician or physicians.

Those who argue for a blanket waiver by commencing the action, or noting it for trial, or at some other specific point in the pretrial procedure proceed on the assumption that waiver is inevitable, so why not at the particular time they select?

The fallacy in this argument is that such a waiver is not always necessary for a personal-injury plaintiff to make out his prima facie case. In addition, even where such waiver-producing testimony by personal-injury-plaintiff's physicians may seem to be essential to the establishment of plaintiff's prima facie case, he may prefer dismissal to disclosure, or may choose to proceed on the chance that he might be able to make out his case without waiver—both alternatives being within his discretion. If any one of these situations existed in a particular case, the blanket waiver urged upon us would result in the unnecessary and, to the plaintiff, undesirable disclosure of his medical history. If a blanket waiver at some fixed moment in the pretrial procedure is the ultimate answer, it must, for the reasons we have indicated, come from the legislature which created the privilege. Absent legislative action, the trial court should proceed on a case-by-case basis rather than having this court attempt to fix a precise event in the pretrial proceedings which, under all conditions, would constitute an implied waiver. Certainly, neither the commencement of the action nor the establishment of the trial date furnishes any basis in reason for concluding in every case that the plaintiff-patient has decided to waive his statutory privilege and put his treating physician on the stand.

■ We would agree that whenever it does become apparent that the plaintiff must decide in favor of waiver, then that waiver should not be delayed until the trial itself. The plaintiff should not have the unfair tactical advantage of a trial waiver which almost invariably results in a continuance and, frequently, in the dismissal of the action and another trial.

Certainly, at some stage in the pretrial proceedings, the plaintiff must decide whether he is going to call his treating physician or physicians, and, if he is, then the defendant is entitled to know it in time to take the deposition of such physician or physicians and prepare to meet their testimony.

■ Our civil rules bear the same numbers as the federal rules, which we have adopted with few changes. The federal courts, operating under identical rules, seem to have had little difficulty in accelerating the waiver of privilege on a case-to-case basis without the necessity of a blanket waiver.

In *Greene v. Sears, Roebuck & Co.*, 40 F.R.D. 14, 16 (N.D. Ohio 1966), the court moved decisively once it was convinced that the plaintiff intended to waive her privilege, issuing the following order:

> On the developed record before this court it will be deemed that as to the subject matter of this action the plaintiff contemplates a waiver of the physician-patient privilege, unless within five days from receipt of this ruling the plaintiff, in writing, informs the court that such waiver is not intended and will not occur.

Thus when the necessity of waiver seems clear to the trial court, the plaintiff can be readily faced with the moment of decision—will he, or will he not, waive his privilege? In other federal cases, the trial court has compelled, upon request, the delivery of a list of the witnesses (together with their addresses) to be offered on the trial. This "depending on good cause shown," is usually from 10 to 30 days before the trial date. The presence of his treating physician on the plaintiff's list of witnesses is regarded as evidencing his intent to waive the privilege and may subject the physician to deposition. If the plaintiff desires to prevent the deposition being taken, or to limit its scope, he has the burden of convincing the trial court that the deposition should not be taken or to show good cause for such limitation.

We can see no reason why our trial courts, exercising the same broad discretion, should not treat a plaintiff's inclu-

sion of his treating physician among his list of intended witnesses at trial as indicating his intent to waive his privilege. Such an apparent accelerated waiver could then enable the defense to utilize the full range of pretrial discovery procedures as to the treating physicians named and to the same extent and subject to the same controls as would govern discovery after waiver at trial.[9]

At the time the present cases were argued there was considerable discussion as to when an ultimate waiver by a plaintiff of the physician-patient privilege might be implied.

If, as urged, our decision in the *Bond* case, *supra*, renders our existing rules inadequate for a determination of what evidences such an intention to waive the physician-patient privilege, and in consequence a new procedural rule is necessary for that purpose, it should not be promulgated in an opinion such as this, but through the usual procedure we have followed for the adoption of our rules, permitting all interested parties to be heard.

At the oral argument in the present cases, it was also vigorously contended, with some measure of general assent, that early waiver of the privilege presents a tactical advantage to the defense when it is allowed to depose a plaintiff's

---

[9]Contrary to the interpretation some have placed on our decision in *McUne v. Fuqua*, 42 Wn.2d 65, 253 P.2d 632 (1953), we did not there adopt the minority rule that waiver, by permitting one treating physician to testify without objection, is a waiver as to all. It was not necessary to pass upon that point. In *McUne*, the plaintiff had presented sufficient testimony, personally and through his doctors, to render the testimony of his former physician admissible for impeachment purposes, were it not for the privileged nature of some of the proffered testimony. It was pointed out that McUne had not contented himself with an implied representation that the ailments and disabilities, which his medical witnesses described, did not exist prior to the event which gave rise to the claimed liability, but took the witness stand and testified positively that his then existing ailments and disabilities did, in fact, result from that event. He testified that he was able to do heavy work before that event; that his health was good prior thereto; and that he had not consulted a doctor for years. It was held that this testimony waived any available contradictory and impeaching medical testimony. The fact that prior physician-patient relationships had existed was admissible as impeaching testimony in any event.

treating physicians before establishing its own position on the question of a plaintiff's medical state, through a physical examination of plaintiff under CR 35 followed by transmittal of a full written report of that examination to the plaintiff. The contention was that if a defendant were allowed to postpone the CR 35 examination until after deposing a plaintiff's doctors, the examination, when had, would tend to be merely an effort to meet a plaintiff's medical theories rather than producing an independent evaluation of a plaintiff's condition. On this subject, see the well-written article by Jeremiah M. Long in 39 Wash. L. Rev. 665 (Oct. 1964). What has been said in this paragraph serves to emphasize some of the difficulties the court would encounter in promulgating a rule by a decision.

Returning to the issues immediately before us, it is our view that the defendants did not make a showing in either the Appolito or the Ashurst case sufficient to permit the trial court to say with certainty that the injured plaintiff in either case intended to ultimately waive his physician-patient privilege. Nor do we think that the courtesies extended by Mr. Ashurst, with the expectation of thereby securing a speedy settlement, necessarily constitute a waiver of his right to insist that any communications made by him to his doctors, to assist them in diagnosis and treatment, were privileged.

The action of the King County Superior Court in the Ashurst case is approved and affirmed; and the action of the Benton County Superior Court in the Appolito case is disapproved, with directions to quash the subpoenas directed to the physicians in that case.

It should be noted, however, that there is nothing to prevent deposing a treating physician, if the examination is limited to nonprivileged matters. There was no such limitation suggested in the defendants' requests now before the court.

Nor does our present holding imply that there may not be a time, in the pretrial development of either or both of these cases, when the trial court can say that it is clear that

privilege will ultimately be waived; that the waiver should be accelerated; and that the physicians of the plaintiffs can be deposed within such limitations as to the trial court may seem necessary and proper.

The prevailing parties on each writ will recover their costs.

WEAVER, ROSELLINI, HUNTER, HAMILTON, and NEILL, JJ., concur.

HALE, J. (concurring in the result)—I concur in the result of the majority opinion and in its holding that bringing an action for personal injuries does not constitute a waiver of the patient-physician privilege guaranteed to the plaintiff by statute. RCW 5.60.060 (4) states:

> (4) A regular physician or surgeon shall not, without the consent of his patient, be examined in a civil action as to any information acquired in attending such patient, which was necessary to enable him to prescribe or act for the patient . . . .

I would not, however, go beyond the straightforward declaration of the statute. I would not anticipate conditions under which the statutory privilege will be deemed waived. Thus, I think our decision in *Bond v. Independent Order of Foresters*, 69 Wn.2d 879, 421 P.2d 351 (1966), which sustains the privilege and declares the rule without embellishment, supplies a ratio decidendi for the instant case. Accordingly, I think the majority opinion goes beyond the needs of the occasion in contemplating circumstances under which a waiver may be implied from a bringing of the action.

FINLEY, C. J. (dissenting)—I dissent. I would hold that plaintiffs in both cases waived their physician-patient privilege upon filing of their complaints.

My reasons for this position were set forth in my dissent in *Bond v. Independent Order of Foresters*, 69 Wn.2d 879, 883, 421 P.2d 351, 354 (1966). Summarized briefly, they are as follows: (1) The question presented is not whether the

physician-patient privilege is desirable or should be maintained, but rather under what circumstances is the privilege waived. (2) This question is judicial, not legislative. (3) The policy underlying our rules of procedure, although allowing for privileged communications, seeks to promote accessibility to relevant information. (4) Our decisions (prior to *Bond*) seem to support the view that the act of filing a complaint waives the physician-patient privilege in personal injury cases insofar as information about injuries subject to litigation is concerned. (5) To be consonant with the policy underlying our rules of procedure, the physician-patient privilege should be deemed waived at the earliest appropriate time; this would seem to be, as suggested by our prior decisions, the time when a complaint is filed.

The majority opinion in the instant case is, in my view, an improvement over the majority opinion in *Bond, supra.* Many, if not all, plaintiffs in personal injury cases eventually waive their physician-patient privilege as to relevant injuries. By apparently endorsing the federal decisional rule[10] of accelerated waiver, the majority in the instant case has recognized this fact and has encouraged employment of discovery procedures once it is clear that waiver of the physician-patient privilege will ultimately occur.

In my judgment, however, the accelerated-waiver rule is less desirable than a rule imposing waiver at some specific point in time. The accelerated-waiver rule, unlike a specific point waiver rule, will require a type of case-by-case decision-making at the trial court level which will promote appellate litigation. Parties to personal injury actions may not easily ascertain when waiver has in fact occurred. They may be unsure of how to proceed with litigation if they wish to avoid waiver. The accelerated-waiver rule, again unlike a specific point waiver rule, fails to fulfill one of the principal functions of any decisional rule—settlement of

---

[10]*Greene v. Sears, Roebuck & Co.*, 40 F.R.D. 14 (N.D. Ohio 1966); *Awtry v. United States*, 27 F.R.D. 399 (S.D.N.Y. 1961); *Mariner v. Great Lakes Dredge & Dock Co.*, 202 F. Supp. 430 (N.D. Ohio 1962).

particular issues so that the results of future controversies can be better predicted. In short, the accelerated-waiver rule, in contrast to a specific point waiver rule, may create as many difficulties as it resolves.

As stated in the dissent in *Bond,* a rule imposing waiver at a particular point in time—specifically, upon filing of a complaint—is "consistent with protecting the justifiable interests of the plaintiff, with the progressive policy of our rules of procedure, and with our traditional concept of litigation as a truth-finding process." 69 Wn.2d at 886, 421 P.2d at 356. In my judgment, such a rule should be adopted by this court. Accordingly, I would affirm the order entered in the Appolito case and reverse the order entered in the Ashurst case.

McGOVERN, J., concurs with FINLEY, C. J.